# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

Abu Bakr Ladd,

       Plaintiff,

            No. 4:05-CV-916-UNA (RHK/AJB)
            **MEMORANDUM OPINION AND ORDER**

v.

St. Louis Board of Police Commissioners, *et al.*,

       Defendants.

Anser Ahmad, Ahmad Law Office P.C., Harrisburg, Pennsylvania, for Plaintiff.

Dana C. Ceresia, Assistant Attorney General, St. Louis, Missouri, for Defendants.

  Plaintiff Abu Bakr Ladd alleges in this action that the St. Louis Board of Police Commissioners ("BPC"), several BPC members, and St. Louis Metropolitan Police Department ("SLMPD") officer Jeffrey Pickering violated his civil rights in connection with a September 2003 search at Ladd's home and Ladd's subsequent arrest. The defendants now move to dismiss Ladd's Amended Complaint. For the reasons set forth below, the Motion will be granted.

## BACKGROUND

  On September 17, 2003, Pickering received information from a confidential informant indicating that illegal activities were transpiring at Ladd's home in Saint Louis, Missouri. (Am. Compl. ¶ 11A.) A few days later, Pickering conducted surveillance of

Ladd's residence and allegedly observed three drug transactions take place there. (Id. ¶ 11C.) Based on his personal observations and information from the confidential informant, Pickering completed an affidavit in support of a search warrant. (Id. ¶ 11.) On September 25, 2003, officers from the SLMPD and agents from the Federal Bureau of Investigation executed the search warrant at Ladd's residence. (Id. ¶ 17.) Upon completing the search, FBI agents arrested Ladd and took him into custody. (Id. ¶ 18.)

Ladd remained in federal custody for several months. (Id. ¶ 20.) While in custody, an Assistant United States Attorney and several agents from the FBI and the Bureau of Alcohol, Tobacco, Firearms, and Explosives met with Ladd and requested that he work as an informant for the federal government within the local Muslim community. (Id. ¶ 43.) Ladd rejected their request and "objected to being characterized as a drug dealer by the government in the [allegedly] fabricated search warrant." (Id.) On December 11, 2003, Ladd was released from federal custody, and on January 13, 2004, the charges against him were dropped. (Id. ¶¶ 23-24.)

On January 15, 2004, Ladd filed an "Allegation of Employee Misconduct Report" with the Internal Affairs Division ("IAD") of the SLMPD. (Id. ¶ 25 & Ex. L.) In that Report, Ladd alleged that Pickering had fabricated the information contained in the search-warrant affidavit.[1] (Id.) On June 2, 2004, the IAD issued a written recommendation that Ladd's complaint be "not sustained." (Id. ¶ 30 & Ex. N.) Ladd

---

[1] Ladd claims that his original Misconduct Report was "lost" by the IAD and that he was asked to file another Report. (Am. Compl. ¶ 27.) He did so on January 28, 2004. (Id. ¶ 28.)

appealed that recommendation to the BPC, but the BPC sustained the IAD's recommendation. (Id. ¶¶ 31-32 & Exs. O-P.)

On June 3, 2005, Ladd commenced this action, alleging four claims: (1) unreasonable search and seizure in violation of the Fourth Amendment, (2) malicious prosecution, (3) false imprisonment, and (4) civil conspiracy. Ladd predicated his claims on Pickering's alleged fabrication of the information contained in the search-warrant affidavit. Ladd named as Defendants the City of Saint Louis; St. Louis Mayor Francis Slay; the FBI and the FBI agents who had met with Ladd; the ATF and the ATF agent who had met with Ladd; the United States Attorney's Office ("USAO") and several of its officials; and the SLMPD and eleven of its officers. These defendants filed Motions to Dismiss Ladd's Complaint; by Order dated April 28, 2006 (Doc. No. 53), the Court granted several of those Motions (either *in toto* or in part) and further granted Ladd leave to amend his Complaint.

On May 30, 2006, Ladd filed an Amended Complaint. Although the claims alleged in the Amended Complaint are the same as those in the initial Complaint, Ladd has changed the defendants he has sued. Now named as defendants are the BPC; BPC members Colonel Susan C.J. Rollins, Colonel Bart Saracino, Colonel Jo Ann Freeman, Colonel Michael J. Quinn, and Captain Antoinette M. Filla (collectively, the "BPC

Defendants"); and Pickering (collectively with the other defendants, "Defendants"). Defendants now move to dismiss Ladd's claims.[2]

## STANDARD OF REVIEW

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a court may consider only (1) the factual allegations in the complaint, Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989), and (2) "materials embraced by the pleadings and materials that are part of the public record," In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002) (internal quotations and citations omitted). All factual allegations in the complaint, and all reasonable inferences derived therefrom, must be accepted as true. Midwestern Mach., Inc. v. Nw. Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999). Courts need not consider conclusory allegations, however, or "blindly accept legal conclusions drawn by the pleader of the facts." Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981); accord Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

---

[2] Although Defendants repeatedly argue that the Amended Complaint should be dismissed in its entirety, they have not challenged Ladd's Fourth Amendment claim insofar as it is alleged against Pickering.

## ANALYSIS

**I.     The BPC**

Defendants first argue that only the members of the BPC may be sued, not the BPC itself. (Def. Mem. at 2.) Defendants are correct. The Eighth Circuit has held that "[t]he St. Louis Board of Police Commissioners is not a suable entity. 'Jurisdiction . . . can only be obtained by suing its individual members.'" Edwards v. Baer, 863 F.2d 606, 609 (8th Cir. 1988) (citations omitted); accord Thompson v. City of Kansas City, Civ. A. No. 93-2446-EEO, 1994 WL 325997, at *2 (D. Kan. June 7, 1994) (discussing Board of Police Commissioners in St. Louis and Kansas City).

Moreover, Ladd has not specified in his Amended Complaint whether he has sued the BPC Defendants in their individual or official capacities. Accordingly, the Court must presume that the BPC Defendants have been sued in their official capacities. Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity."). An official capacity suit, however, is simply "another way of pleading an action directly against the public entity itself." Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir. 1994). In other words, Ladd has sued the BPC twice: once by naming it as a defendant in each claim, and once more by naming the BPC Defendants (in their official capacities) as defendants in each claim. The Court may dismiss the BPC as a defendant in these circumstances. Artis, 161 F.3d at 1182.

5

Accordingly, the BPC will be dismissed.[3]

## II. The Remaining Defendants

Defendants next argue that none of Ladd's claims passes legal muster; they are correct.

### A. The BPC Defendants

Defendants first note that the BPC is mentioned in only three paragraphs of the Amended Complaint. (Def. Mem. at 3.) Those paragraphs state:

> 31. Plaintiff appealed [the Internal Affairs Decision] and requested further investigation from the BPC (see Exhibit O).
>
> 32. On July 5, 2004, the BPC responded to Plaintiff's appeal and upheld the "not sustained" recommendation of the [IAD] (see Exhibit P).
>
> 33. Given that the BPC stated after conducting its "investigation," Defendant Pickering's conduct was not unlawful and, therefore, not outside the scope of his employment, the BPC is equally liable for the condoned conduct of any one of the officers of the St. Louis Police Department.

(Am. Compl. ¶¶ 31-33.) The BPC Defendants argue that they cannot be held liable for "condoning" the conduct of SLMPD officers as a matter of law. (Def. Mem. at 3-4.)

---

[3] Defendants argue that by improperly naming the BPC as a defendant, Ladd's entire "amended complaint should be dismissed for lack of subject[-]matter jurisdiction." (Def. Mem. at 2.) This argument conflates the concepts of *subject-matter jurisdiction* and *personal jurisdiction*. Certainly, the Court has the *authority* to adjudicate Ladd's claims, one of which arises under the United States Constitution. See 28 U.S.C. § 1331. Subject-matter jurisdiction over Ladd's claims therefore exists. The BPC, however, is not subject to *personal* jurisdiction – i.e., it is not capable of being brought before the Court – because it is not "capable of being sued as a distinct entity." Thompson, 1994 WL 325997, at *2.

They further argue that they cannot be held liable in a supervisory capacity based on the doctrine of *respondeat superior*. (Id.)

In response, Ladd argues that the BPC Defendants may be held liable because SLMPD officers are "under the direction and control of the [BPC]" and at least one such officer – Pickering – deprived Ladd of his constitutional rights. (Mem. in Opp'n at 4.) Ladd also argues that the BPC Defendants are subject to liability because the BPC was directly involved in the alleged civil rights violations, insofar as it attempted to "cover up" those violations. (Id.) Neither argument has merit.

First, Defendants are correct that the doctrine of *respondeat superior* does not apply to Section 1983 claims. See, e.g., Canton v. Harris, 489 U.S. 378, 385 (1989) ("Respondeat Superior or vicarious liability does not attach under § 1983"); Miller v. Compton, 122 F.3d 1094, 1100 (8th Cir. 1997). Ladd argues that the BPC Defendants are subject to liability because the SLMPD officers involved in the alleged deprivation of Ladd's rights were "under the direction and control of the [BPC]." (Mem. in Opp'n at 4.) This is nothing more than an ill-fated attempt to foist liability onto the BPC Defendants under the doctrine of *respondeat superior*.

Ladd's efforts to save his claims against the BPC Defendants by arguing that the BPC was "directly involved" in the deprivation of his rights fares no better. It is true that, under Section 1983, supervisory liability may attach if a supervisor "directly participated" in a constitutional violation. Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). A

7

supervisor may also be held liable for exhibiting deliberate indifference to, or tacitly authorizing, a constitutional violation. Id. In either instance, however, the plaintiff must show that the supervisor's action was the cause-in-fact of the plaintiff's injury. Calloway v. Miller, 147 F.3d 778, 781 (8th Cir. 1998); Butler v. Dowd, 979 F.2d 661, 669-70 (8th Cir. 1992). "Conduct is the cause[-]in[-]fact of a particular result if the result would not have occurred but for the conduct; similarly, if the result would have occurred without the conduct complained of, such conduct cannot be the cause[-]in[-]fact of that particular result." Calloway, 147 F.3d at 781.

Here, Ladd cannot show that the BPC's conduct was the cause-in-fact of his injuries. Ladd asserts that he has been injured as a result of the "unlawful" search of his home and his subsequent arrest and prosecution. (Am. Compl. ¶¶ 35-37, 42, 48.) The allegations in the Amended Complaint, however, establish that the BPC's involvement did not occur until *after* Ladd's arrest and *after* he had been released from custody. (Id. ¶¶ 31-33.)[4] Accordingly, Ladd cannot show that his injuries would not have occurred but for the BPC's after-the-fact conduct. The BPC Defendants, therefore, will be dismissed from the case.

---

[4] Ladd also asserts that Defendants "conspired to deprive [him] of his civil rights" (Am. Compl. ¶ 52) and that Defendants "conspired together in an effort to cover up their involvement in the deprivation" (Am. Compl. ¶ 53). However, Ladd does not allege that the BPC Defendants were involved in the former of these two alleged conspiracies; only the "cover up" conspiracy concerns these defendants. And, as set forth in more detail below, the "cover up" conspiracy claim fails because Ladd has not alleged facts sufficient to support such a claim.

B.   **Pickering**

With the BPC and the BPC Defendants dismissed, the only defendant remaining in this case is Pickering. Defendants assert that the claims against Pickering also fail as a matter of law, except for Ladd's Fourth Amendment claim (which Defendants have not challenged). (See note 2, supra.) The Court agrees.

1.   **The malicious prosecution and false imprisonment claims**

Defendants argue that Ladd's malicious prosecution claim fails because "[a]llegations of malicious prosecution do not establish a civil rights cause of action under [Section] 1983." (Def. Mem. at 5.) Similarly, Defendants argue that Ladd's false imprisonment claim fails because Section 1983 "precludes actions for injuries sounding purely in tort." (Id. at 7.) Initially, these seemed to the Court to be curious arguments, because it appears that Ladd's malicious prosecution and false imprisonment claims are state-law tort claims, not Section 1983 claims. Indeed, in his malicious prosecution claim, Ladd has simply pleaded the elements of such a claim under Missouri law; he nowhere mentions Section 1983, the constitutional rights purportedly violated, or any constitutional injury. (Am. Compl. ¶¶ 38-45.) The same is true of Ladd's false imprisonment claim. (Id. ¶¶ 46-50.)

However, in his Memorandum in Opposition to Defendants' Motion, Ladd makes clear that he is, in fact, bringing Section 1983 claims based on the allegedly malicious prosecution and false imprisonment. (See, e.g., Mem. in Opp'n at 6 ("Defendants argue

9

that Plaintiff's claim of malicious prosecution is not punishable under § 1983. Plaintiff disagrees."); id. at 9 ("[T]his case involves violations of Plaintiff's civil rights, and is not an action in tort.").) And, although the argument is not raised by Defendants, the Court concludes that Ladd's attempt to bring his malicious prosecution and false imprisonment claims under Section 1983 renders those claims redundant and subject to dismissal.

As the Amended Complaint makes clear, the factual predicate supporting the malicious prosecution and false imprisonment claims is Pickering's submission of the allegedly fabricated search-warrant affidavit. (See Am. Compl. ¶ 42 ("Defendants had no probable cause to prosecute the Plaintiff as the foundation for probable cause was completely fabricated."); id. ¶ 48 ("Defendants had no legal justification to confine Plaintiff as the search warrant was unlawful.").) The factual predicate for Ladd's Fourth Amendment claim is precisely the same. (See Am. Compl. ¶¶ 35-37.) Ladd drives this point home in his Memorandum in Opposition. He states that he has "clearly set forth a claim of malicious prosecution" because he "was deprived of his Fourth Amendment rights when an unlawful search warrant was issued for his home," which "led to his unlawful arrest, unlawful detention . . . and prosecution." (Mem. in Opp'n at 7.) He further states that his false imprisonment claim arises out of the "unlawful search warrant . . . issued in violation of Plaintiff's Fourth Amendment right to [be free from] unreasonable search and seizure, which led to the false imprisonment of the plaintiff."

(Id.) There is no dispute, therefore, that the same factual predicate supports Ladd's Fourth Amendment claim and his malicious prosecution and false imprisonment claims.

Moreover, the purpose of an action under Section 1983 is to remedy a "deprivation of any rights, privileges or immunities secured by the Constitution." 42 U.S.C. § 1983; accord Monroe v. Pape, 365 U.S. 167, 172 (1961), overruled on other grounds, Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). The constitutional deprivation at issue here is precisely the same regardless of whether the claim is cast as an unlawful seizure under the Fourth Amendment, a malicious prosecution, or a false imprisonment: the right to be free from arrest and prosecution without probable cause. The constitutional injury accruing from these three claims, therefore, is the same.

The inescapable conclusion is that Ladd has pleaded the same claim three times. Stated differently, he has twice attempted to re-cast his Fourth Amendment claim: once as a malicious prosecution claim and once as a false imprisonment claim. Accordingly, the Court concludes that Ladd's malicious prosecution and false imprisonment claims are redundant and should be dismissed. See Artis, 161 F.3d at 1182 (affirming dismissal of redundant § 1983 claims); McCabe v. Macaulay, __ F. Supp. 2d __, No. 05-CV-73-LRR, 2006 WL 2549070, at *18 (N.D. Iowa Sept. 1, 2006) (dismissing as duplicative substantive due process claim predicated on violation of Fourth Amendment, because plaintiff had also asserted Fourth Amendment claim); see also Fed. R. Civ. P. 12(f) (court

may *sua sponte* strike from pleadings "any redundant, immaterial, impertinent, or scandalous matter").[5]

### 2. The civil conspiracy claim fails

Before analyzing Defendants' arguments with respect to Ladd's civil conspiracy claim, an initial point bears mentioning. Ladd has set forth two purported conspiracies: one designed to deprive him of his civil rights, and one designed to "cover up" that alleged deprivation. (Am. Compl. ¶¶ 52-53.) He further alleges that "the defendants" – namely, Pickering, the BPC, and the BPC Defendants – were the purported co-conspirators. (Id.) Yet, Ladd has alleged no facts in the Amended Complaint suggesting that the BPC or the BPC Defendants were in any way involved in the first conspiracy: the underlying deprivation of his civil rights. Indeed, as noted above, the Amended Complaint alleges that the BPC became involved only after Ladd's arrest and after he had been released from custody. (Id. ¶¶ 31-33.) Accordingly, based on Ladd's own allegations, the conspiracy to deprive him of his civil rights could have involved only one defendant: Pickering. This conspiracy claim, therefore, dies on the vine. See, e.g., Barstad v. Murray County, 420 F.3d 880, 887 (8th Cir. 2005) ("A conspiracy claim requires . . . at least two persons.").

Ladd's other civil conspiracy claim also fails, but for a different reason. Ladd alleges that Defendants conspired to cover up their involvement in the deprivation of

---

[5] At the hearing on Defendants' Motion, Ladd conceded that his malicious prosecution and false imprisonment claims are subject to dismissal as duplicative.

Ladd's civil rights (Am. Compl. ¶ 53) and had "a meeting of the minds" (id. ¶ 55). Defendants argue that this claim must be dismissed because Ladd has made only vague and conclusory allegations of a conspiracy, rather than alleging *facts* suggesting a mutual understanding of the conspiracy or a meeting of the minds. (Def. Mem. at 8 (citing Cooper v. Delo, 997 F.2d 376, 377 (8th Cir. 1993), and Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983) (*per curiam*)).) In response, Ladd appears to concede that he has not alleged facts sufficient to support a conspiracy claim; he avers that he has alleged a mutual understanding and a meeting of the minds, but fails to identify any specific facts supporting those conclusory allegations. (Mem. in Opp'n at 8.) The Amended Complaint, therefore, fails to plead this conspiracy claim with the requisite specificity. See Cooper, 997 F.2d at 377 (affirming dismissal of conspiracy claim because plaintiff did not "allege facts suggesting a mutual understanding or meeting of the minds"); Snelling v. Westhoff, 972 F.2d 199, 200-01 (8th Cir. 1992) (failure to allege specific facts showing meeting of minds of co-conspirators meant conspiracy allegations "were conclusory and failed to state a claim").

While stopping short of actually arguing the point, Ladd cites White v. Walsh, 649 F.2d 560 (8th Cir. 1981), to suggest that he need not allege facts sufficient to establish that Defendants had a mutual understanding of the conspiracy or a meeting of the minds. (Mem. in Opp'n at 8.) In White, the plaintiff claimed that the judge presiding over his criminal trial conspired with his defense counsel to deprive him of his civil rights by

13

empaneling an all-white jury. 649 F.2d at 561. The court recognized that "conspiracies are by their nature usually clandestine" and that plaintiffs therefore are not always "in a position to allege with precision the specific facts giving rise to the claim." Id. The court ultimately concluded that the plaintiff's conspiracy allegations were sufficient to survive the defendants' motion to dismiss because the plaintiff had alleged that (1) his counsel had refused his request to be present during jury selection, despite the plaintiff having advised counsel not to proceed with any aspect of the trial with him absent, (2) the judge had the plaintiff removed from the courtroom and provided no reason for having done so and, by the time the plaintiff returned, an all-white jury had been selected, and (3) the judge refused to alter the jury despite the plaintiff's complaints and rejected the plaintiff's request for new counsel. Id. at 562. The court also noted that White was proceeding *pro se* and that it therefore needed to construe his complaint liberally. Id. at 561-62.

White is clearly distinguishable from the facts of this case. First, Ladd is not proceeding *pro se*; therefore, the Court need not "liberally construe" Ladd's claims. Second, unlike the very specific facts alleged in White, the facts alleged here simply do not suggest a mutual understanding of the alleged conspiracy or a meeting of the minds. The conspiracy purportedly involves Pickering and the BPC, but the Amended Complaint is utterly devoid of any facts suggesting that Pickering and the BPC reached an agreement to "cover up" the alleged deprivation of Ladd's constitutional rights. In fact, the

Amended Complaint makes little mention of the BPC at all, except to say that the BPC affirmed the IAD's decision to "not sustain" Ladd's complaint.

Having concluded that Ladd's civil conspiracy claim must be dismissed because he has failed to plead facts sufficient to support the claim, the Court must decide whether to grant Ladd leave to amend. The Court notes that Ladd has not sought leave to amend this claim. (See Mem. in Opp'n at 8.) Moreover, in dismissing Ladd's original civil conspiracy claim, the Court granted Ladd leave to amend and directed him to include in his Amended Complaint specific factual allegations supporting his claims. (See April 28, 2006 Memorandum Opinion and Order at 19.) Ladd has failed to heed the Court's warning. Accordingly, the Court will not grant Ladd leave to amend; this is without prejudice to Ladd seeking leave to amend should discovery provide a sufficient factual basis for this claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 61) is **GRANTED**. More specifically, and for the sake of clarity, it is **ORDERED** as follows:

A. The Fourth Amendment claim is **DISMISSED WITH PREJUDICE** insofar as it is alleged against the BPC and the BPC Defendants, but the claim remains pending against Pickering;

B. The malicious prosecution and false imprisonment claims are **DISMISSED WITH PREJUDICE** as against all Defendants, because the claims are duplicative of Ladd's Fourth Amendment claim; and

C. The civil conspiracy claim is **DISMISSED WITH PREJUDICE** insofar as it alleges a conspiracy to violate Ladd's civil rights and **DISMISSED WITHOUT PREJUDICE** insofar as it alleges a conspiracy to "cover up" the deprivation of Ladd's rights.

Dated: October  4 , 2006

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge