# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

Abu Bakr Ladd,

           Plaintiff,

No. 4:05-CV-916-UNA (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

v.

St. Louis Board of Police Commissioners, *et al.*,

           Defendants.

Anser Ahmad, Ahmad Law Offices, P.C., Harrisburg, Pennsylvania, for Plaintiff.

Dana C. Ceresia, Assistant Attorney General, St. Louis, Missouri, for Defendants.

This Section-1983 action arises out of the September 25, 2003 search of Plaintiff Abu Bakr Ladd's home and his subsequent arrest. The Court previously dismissed all claims in this case but one: Ladd's Fourth-Amendment claim against Defendant Jeffrey Pickering. Pickering now moves for summary judgment on that claim. For the reasons set forth below, his Motion will be granted.[1]

## BACKGROUND

In May of 2003, an agent working with a federal anti-terrorism task force contacted a friend, St. Louis Metropolitan Police Department ("SLMPD") detective Scott McKelvey,

---

[1] The Court has concluded that oral argument on Pickering's Motion will not materially assist it in resolving the issues raised therein.

and asked McKelvey if he was familiar with Ladd. (Pickering Dep. Tr. at 18.) McKelvey, in turn, contacted Pickering, a detective in the SLMPD intelligence division, to ascertain whether Pickering was familiar with Ladd. (Id. at 17.) Pickering then contacted several confidential informants with whom he had worked in the past and asked them whether they knew Ladd; none did. (Id.)

Two months later, a confidential informant contacted Pickering about an unrelated matter. (Id. at 21-22.) Pickering asked the informant whether he was familiar with Ladd, and the informant stated that he knew him, had been in his house, knew that he possessed firearms and narcotics there, and knew that he sold narcotics there. (Id. at 23.) Pickering then asked the informant to try to gather as much information as possible about Ladd. (Id.)

On September 17, 2003, the confidential informant again contacted Pickering and advised him that Ladd had narcotics and firearms in his house at that time. (Id.) He also advised Pickering of the manner in which Ladd sold narcotics. (Id. at 36-37.)[2] Two days later, Pickering conducted surveillance on Ladd's residence and observed at least three

---

[2] According to the affidavit Pickering later submitted in support of a search warrant, the confidential informant described the transactions as follows:

> A customer approaches the front door of the residence and knocks on the door. Ladd answers the door and allows the customer into the residence to place his/her order. After Ladd receives the money, he retrieves the narcotics or firearms from one of several hiding places inside the residence. After receiving their purchase the customer then leaves the residence.

(Def. Ex. A.)

people come and go from Ladd's residence in the manner the confidential informant had described. (Id. at 40-41.)

On September 23, 2003, Pickering conducted further surveillance on Ladd's residence; he observed Ladd pull up to his home in a pickup truck and carry inside a long item that appeared to be covered with a blanket, which Pickering believed to be a rifle or a shotgun. (Id. at 44; Def. Ex. A.) Later that day, the confidential informant again contacted Pickering and told him that he had just left Ladd's house and that he had seen narcotics and firearms there. (Id. at 46-47.)

In light of the foregoing, Pickering prepared an affidavit in support of a search warrant for Ladd's residence (the "Affidavit"). In the Affidavit, he described the information that had been provided to him by the confidential informant, as well as his observations during his surveillance of Ladd's house. He also stated that the informant had provided him with information in the past and that such information had "led to the arrest of three persons for possession of illegal drugs," one of whom was convicted (with charges then pending against the other two). (Def. Ex. A.) Pickering presented the Affidavit to a state-court judge on September 24, 2003, at 12:30 p.m., and the judge signed the search warrant. (Def. Ex. D.)

Pickering and nine other police officers executed the search warrant the following day. They first knocked on Ladd's door and announced that they were police officers with a search warrant; they received no response. The officers then broke open the front door and entered the residence. They secured Ladd and the other persons inside (Ladd's wife and

3

son) and then asked Ladd if he had any narcotics or firearms in the house. Ladd responded, "No, I don't know what you're talking about." Officers then searched the house. (Def. Ex. B.) Their search revealed two loaded handguns and two semi-automatic rifles. (Id.) Officers also found pills and other powder spread around Ladd's residence, which turned out to be homeopathic medicines and not narcotics. (Pickering Dep. Tr. at 44-45.)

Ladd was then placed under arrest for being a felon in possession of a firearm;[3] ultimately, he was transferred to federal authorities for prosecution for that crime, and he was later indicted on that charge. (Def. Ex. B.) He remained in federal custody for several months. During the course of his criminal case, Ladd requested a Franks hearing, alleging that Pickering had made false statements in the Affidavit. (Ladd Dep. Ex. C.)[4] Before a Franks hearing could be held, however, the Government dismissed the case against Ladd.

On January 15, 2004, Ladd filed an "Allegation of Employee Misconduct Report" with the Internal Affairs Division ("IAD") of the SLMPD. (Compl. Ex. L.) In that Report, Ladd alleged that Pickering had fabricated the information contained in the Affidavit. (Id.) On June 2, 2004, the IAD issued a written recommendation that Ladd's complaint be "not sustained." (Pickering Dep. Ex. 2.) Ladd appealed that recommendation to the St. Louis

---

[3] Ladd was convicted of first-degree robbery in California in 1977, when he was known as "Udo Gallop." (Ladd Dep. Tr. at 57-58 & Ex. F.)

[4] Franks v. Delaware, 438 U.S. 154 (1978), held that a defendant in a criminal case is entitled to a hearing if he makes a substantial showing that a false statement was knowingly and intentionally made by a police officer in a search-warrant affidavit.

4

Board of Police Commissioners ("BPC"), but the BPC sustained the IAD's recommendation. (Compl. Exs. O-P.)

On June 3, 2005, Ladd commenced this action against the BPC, several of its members, and Pickering, alleging four claims: (1) unreasonable search and seizure in violation of the Fourth Amendment, (2) malicious prosecution, (3) false imprisonment, and (4) civil conspiracy. The crux of Ladd's claims is that Pickering fabricated the existence of the confidential informant as a guise to obtain entry into Ladd's home, ostensibly because authorities suspected that Ladd was a terrorist.

Several of the Defendants subsequently moved to dismiss on various grounds, and the Court granted their motions for reasons not pertinent here; the only claim remaining in the case is Ladd's Fourth-Amendment claim against Pickering. Pickering now seeks summary judgment on that claim.

**STANDARD OF REVIEW**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721,

723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

Pickering argues that Ladd lacks any evidence suggesting that he fabricated the existence of the confidential informant or any other information contained in the Affidavit. Accordingly, Pickering argues that he is entitled to qualified immunity, because his actions did not violate Ladd's clearly established constitutional rights.[5]

It is appropriate for Pickering to seek summary judgment in this fashion, *i.e.*, by "pointing out . . . that there is an absence of evidence" to overcome Pickering's qualified-immunity defense. Celotex, 477 U.S. at 325. In such a situation, the burden rests with the non-moving party (Ladd) to come forward with sufficient evidence to create a genuine issue on that defense – that is, with evidence indicating that his constitutional rights were violated. See id.; Fed. R. Civ. P. 56(e). Ladd has failed to do so here.

In arguing that Pickering is not entitled to qualified immunity, Ladd mounts a two-pronged attack on the facts recounted in the Affidavit, arguing that (1) Pickering fabricated the existence of the confidential informant and (2) Pickering lied about his surveillance of

---

[5] A police officer is entitled to qualified immunity if his conduct did not violate the plaintiff's constitutional rights. E.g., Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004).

6

Ladd's home.  Ladd has completely failed to proffer evidence that would support either assertion, however.

As for Ladd's first argument – that Pickering fabricated the existence of the confidential informant – Ladd "concedes that he is unable to provide any evidence" to support it.  (Mem. in Opp'n at 11.)[6]  Moreover, the fruits of the search of Ladd's home were consistent with the "fabricated" information that Ladd now challenges.  Officers seized several weapons from Ladd's home, and they also found drug powder and pills throughout his house, which is precisely what the informant advised Pickering that he would find.[7]  The correlation between the information provided and the items ultimately found in Ladd's home undermines the suggestion that the informant did not exist.[8]

Ladd next challenges the facts in the Affidavit regarding Pickering's surveillance of Ladd's home, arguing that Pickering lied about observing persons entering his home on September 19, 2003 because he purportedly was out of town that day.  He points to a rental-car receipt in support of his argument, but that receipt merely indicates that Ladd's *wife* picked up a rental car on September 19, 2003 *in St. Louis*.  (Ladd Dep. Ex. B.)

---

[6] Ladd blames his failure on Magistrate Judge Boylan's Order denying his Motion to Compel (Doc. No. 86) and the undersigned's affirmance thereof (Doc. No. 91).  (See Mem. in Opp'n at 9-11 ("Plaintiff strongly believes that the denial of his motions to compel has left him severely prejudiced at the summary judgment stage.").)  The Court perceives no reason to revisit those rulings here.

[7] Although the latter items turned out to be homeopathic medicines, there is no reason to conclude that the informant should have been aware of that fact.

[8] Ladd also points out that Pickering initially was unable to find an informant who knew him and then suddenly located one more than two months later, but the Court does not believe that this delay in any way suggests that Pickering fabricated the existence of the informant.

7

Moreover, even if it had been Ladd who had picked up the rental car, the receipt shows that the car was not obtained until 12:16 p.m. (Id.) Pickering testified at his deposition, however, that he conducted surveillance at 9:30 a.m. that day, almost three hours earlier. (Pickering Dep. Tr. at 53.) Hence, there is nothing inconsistent about the rental-car receipt and Pickering's statement that he observed persons entering Ladd's home on September 19.[9]

Simply put, Ladd has offered nothing more than his own speculation that Pickering "knowingly provided false information in his affidavit," namely, "information about a CI's observations who never existed and information about his own observations that never took place." (Mem. in Opp'n at 11.) His Opposition brief is replete with admissions that he possesses nothing more than hunches, speculation, and contentions about Pickering's alleged prevarications. (See, e.g., Mem. in Opp'n at 7 ("Plaintiff *strongly believes* that Defendant Pickering fabricated the existence of a confidential informant in order to obtain an illegal search warrant for Plaintiff's house.") (emphasis added); id. ("Plaintiff *contends* that the other assertions contained in Defendant's affidavit . . . were fabricated.") (emphasis added); id. at 9 ("Plaintiff *asserts* that Defendant Pickering . . . fabricated a CI who did not

---

[9] Ladd also argues that, as a Muslim, he does not allow adult males into his home. The Affidavit, however, nowhere states that the persons Pickering observed coming and going from Ladd's house were male. Moreover, according to Ladd, males would be restricted from entering his home only when his wife was present. (See Ladd Dep. Ex. C, ¶ 6(b).) There is no evidence that Pickering's observations occurred when Ladd's wife was home, however. Finally, Ladd admits that people were repeatedly entering and exiting his home, either because of his wife's homeschooling class, to obtain homeopathic medicines, or for other reasons. (Ladd Dep. Tr. at 41-45.)

8

even exist.") (emphasis added).) This is simply not enough. E.g., Thomas v. Corwin, 483 F.3d 516, 530 (8th Cir. 2007) ("skeletal allegations, unsupported with specific facts or evidence, are insufficient to create a genuine issue of fact so as to preclude summary judgment"); Bloom v. Metro Heart Group of St. Louis, Inc., 440 F.3d 1025, 1028 (8th Cir. 2006) ("speculation and conjecture are insufficient to defeat summary judgment").

Because Ladd has failed to demonstrate that Pickering knowingly included false information in the Affidavit, he has failed to show a violation of his constitutional rights. Accordingly, Pickering is entitled to qualified immunity on Ladd's Fourth-Amendment claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendant Pickering's Motion for Summary Judgment (Doc. No. 92) is **GRANTED** and the remaining claim in Plaintiff's Amended Complaint (Doc. No. 54) – the Fourth-Amendment claim against Pickering – is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November  2 , 2007                                          s/Richard H. Kyle
                                                                   RICHARD H. KYLE
                                                                   United States District Judge

9