UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ABU BAKER LADD,<br><br>PLAINTIFF,<br><br>V.<br><br>JEFFREY PICKERING, in his official capacity,<br><br>DEFENDANT. | CIVIL NO. 4:05CV916UNA (RHK/AJB)<br><br>**ORDER OPINION** AND<br>**REPORT & RECOMMENDATION** |

Anser Ahmad, Ahmad Law Office P.C., 105 N. Front Street, Suite 106, Harrisburg PA 17101-1436 (for Plaintiff);

Dana C. Ceresia, Assistant Attorney General, Office of the Attorney General of Missouri, P.O. Box 861, St. Louis MO 63188 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on Plaintiff's Motion to Compel Discovery [Docket No. 136]. A telephonic hearing was held on the motion on August 6, 2010. Anser Ahmad appeared on behalf of Plaintiff. Dana C. Ceresia appeared on behalf of Defendant.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Discovery [Docket No. 136] is **GRANTED** for the reasons set forth herein; **IT IS HEREBY RECOMMENDED** that an Order be issued: (1) setting forth a briefing schedule and parameters for the issue of spoliation; (2) setting a hearing on the issue of spoliation for Wednesday, September 22, 2010, at 11:00 a.m. in the 3 North Courtroom of the Thomas F. Eagleton Courthouse, 111 South 10th Street, St. Louis, MO 63102;

1

(3) instructing the Clerk of Court to designate the action against United States Attorney James Martin, Assistant U. S. Attorney John Ware, Chief Joseph Mokwa, Lieutenant Ronnie Robinson, Detective Scott McKelvey, Detective Michael Nicholson, Detective Clifford States, Detective Carlos Ross, Detective Robert Ogilvie, and Special Agent Michael Ramos as "terminated" as of May 30, 2006; (4) instructing the Clerk of Court to designate the action against Mayor Francis Slay as "terminated" on April 28, 2006; and (5) instructing the Clerk of Court to designate the action against the St. Louis Board of Police Commissioners as "terminated" as of October 4, 2006.

## II.     BACKGROUND

This case was initiated in the United States District Court for the Eastern District of Missouri on June 6, 2005.[1] [Docket No. 1] Plaintiff Abu Baker Ladd filed his Amended Complaint on May 30, 2006.[2] [Docket No. 54.] The caption of Plaintiff's Second Amended

---

[1] By Order of the Eighth Circuit Court of Appeals, the Honorable Richard H. Kyle, Senior District Court Judge of the United States District Court for the District of Minnesota was designated and assigned to hold court in this matter. [Docket No. 10.]

[2] Plaintiff's initial Complaint alleged claims against (1) the City of St. Louis, (2) Mayor Francis Slay, (3) the Federal Bureau of Investigation, St. Louis Field Division, (4) Luke J. Adler, (5) Matthew Drummond, (6) the Office of the United States Attorney for the Eastern District of Missouri, (7) United States Attorney James Martin, (8) Assistant U. S. Attorney John Ware, (9) Former United States Attorney Ray Gruender, (10) St. Louis Metropolitan Police, (11) Chief Joseph Mokwa, (12) Lieutenant Ronnie Robinson, (13) Detective Jeffrey Pickering, (14) Detective Scott McKelvey, (15) Detective Michael Nicholson, (16) Detective Steven Gori, (17) Detective Clifford States, (18) Detective Carlos Ross, (19) Detective Stan Coleman, (20) Detective Robert Ogilvie, (21) Detective Stephen Clemons, (22) Bureau of Alcohol, Tobacco and Firearms, and (23) Special Agent Michael Ramos. [Docket No. 1]

Defendant Pickering and the other Defendants brought Motions to Dismiss. [Docket Nos. 5, 14, 25, 28, 31]. The claims against Defendants (1) the City of St. Louis, (2) Mayor Francis Slay, (3) St. Louis Metropolitan Police, (4) the Office of the United States Attorney for the Eastern District of Missouri, (5) Bureau of Alcohol, Tobacco and Firearms, and (6) the Federal Bureau of Investigation, St. Louis Field Division were dismissed with prejudice and Plaintiff was instructed to file an Amended Complaint. [Docket No. 53.] Plaintiff filed his Amended Complaint, which excluded all of the Defendants named in the initial Complaint except for Defendant Pickering. The Defendants named in the initial Complaint who were no longer named

Complaint named the following individuals as Defendants: (1) St. Louis Board of Police Commissioners, (2) Colonel Susan C.J. Rollins, (3) Colonel Bart Saracino, (4) Colonel Jo Ann Freeman, (5) Colonel Michael J. Quinn, (6) Captain Antoinette M. Filla, and (7) Jeffrey Pickering (in his individual capacity). [Docket No. 54.] Plaintiff asserted four claims: a § 1983 claim for violation of Plaintiff's right against unreasonable search and seizure, malicious prosecution, false imprisonment, and civil conspiracy.

Plaintiff alleged in his Amended Complaint as follows: In May 2003, the Federal Bureau of Investigation began investigating Plaintiff. (Am. Compl. at ¶ 9.) On September 17, 2003, Detective Jeffrey Pickering allegedly conferred with a confidential informant who indicated that drug and gun activity was occurring at Plaintiff's residence. (*Id.* at ¶ 11.) In his affidavit in support of a search warrant, Defendant Pickering averred that:

> On 9/17/03 a confidential informant contacted me and advised that Crack Cocaine and firearms are being sold . . . at [Plaintiff's residence]. He/she identified the source as an individual known to him/her as Ubu Ladd. . . .
>
> . . . .
>
> He/she stated that Ladd sells Crack and firearms. The sales are conducted in the following manner: A customer approaches the front door of the residence and knocks on the door. Ladd answers the door and allows the customer into the residence to place his/her order. After Ladd receives the money, he retrieves the narcotics or firearms from one of several hiding places inside the residence.

---

in the Amended Complaint moved to dismiss the Amended Complaint. [Docket Nos. 55, 56, 57.] Their motions were denied as moot because they were no longer named as parties. [Docket No. 58.] Therefore, there were no claims against the following individuals upon the filing of the Amended Complaint: (1) Luke J. Adler, (2) Matthew Drummond, (3) United States Attorney James Martin, (4) Assistant U. S. Attorney John Ware, (5) Former United States Attorney Ray Gruender, (6) Chief Joseph Mokwa, (7) Lieutenant Ronnie Robinson, (8) Detective Scott McKelvey, (9) Detective Michael Nicholson, (10) Detective Steven Gori, (11) Detective Clifford States, (12) Detective Carlos Ross, (13) Detective Stan Coleman, (14) Detective Robert Ogilvie, (15) Detective Stephen Clemons, and (16) Special Agent Michael Ramos. Because the Docket in this matter lists the present case as active with respect to some of these individuals, this Court recommends that an Order be issued directing the Clerk of Court to designate the present case as terminated with respect to these individuals.

> After receiving their purchase the customer then leaves the residence.
>
> . . . .
>
> My informant has been inside [Plaintiff's residence] on numerous occasions and has observed crack cocaine and numerous firearms on each occasion.
>
> My informant has provided me with information in the past. This information has led to the arrest of three persons for possession of illegal drugs. One of the subjects has been convicted, with the other two cases currently pending in the court system.

[Docket No. 91.] Defendant Pickering further averred that he conducted surveillance and observed transactions as described by the confidential informant. (*Id.*) Defendant Pickering also stated:

> On 9/23/03, my informant again contacted me. He/she stated he/she had just left the residence . . . where he/she had observed Ladd to be in possession of cocaine base and firearms.
>
> . . . .
>
> Considering the information supplied by my informant and considering my own personal observations, it is my belief that Cocaine and Firearms are being sold from and stored at the residence[] . . . .

(*Id.*) Based upon the observations of Pickering and the confidential informant, a search warrant was issued for Plaintiff's residence. The warrant was executed by state and federal law enforcement agents on September 25, 2003. (Compl. at ¶ 17.) Plaintiff was thereafter arrested and held in federal custody for almost three months. (*Id.* at ¶ 20.) The federal government subsequently filed an Order of Dismissal of Indictment. (*Id.* at ¶ 24.)

Prior to pursuing the present action, Plaintiff filed a complaint with the Internal Affairs Division (IAD) against Defendant Jeffrey Pickering. [Docket No. 54-17; 116-1.] On July 5,

2004, Plaintiff received a letter from Major Paul M. Nocchiero, Secretary for the Board of Police Commissioners in St. Louis, Missouri. (*Id.*) In the letter, Major Nocchiero wrote:

> In response to your allegation that Detective Pickering lied about having a confidential informant, a check by the IAD investigators confirmed that this particular informant is documented in the files of the division and is known to the supervisor and commander of the division. The informant, as can happen to people with this type of life style, was murdered shortly after the investigation involving you was completed and as such can not be interviewed by our IAD investigators.

(*Id.*) Major Nocchiero also informed Plaintiff that his IAD complaint was "not sustained." (*Id.*)

In June 2006, Defendants brought a Motion to Dismiss the Amended Complaint. [Docket No. 61.] The Court granted Defendants' motion in part, dismissing with prejudice all claims against St. Louis Board of Police Commissioners, Colonel Susan C.J. Rollins, Colonel Bart Saracino, Colonel Jo Ann Freeman, Colonel Michael J. Quinn, and Captain Antoinette M. Filla. [Docket No. 71.] The Court also dismissed with prejudice all the claims against Defendant Pickering, except for Plaintiff's § 1983 claim. (*Id.*)

In April 2007, Plaintiff brought a Motion to Compel, seeking an order compelling production of information pertaining to the confidential informant and information pertaining to Plaintiff's IAD complaint against Defendant Pickering. [Docket No. 82]. This Court denied Plaintiff's Motion as it pertained to the confidential informant. [Docket No. 86.] This Court granted Plaintiff's Motion in so far as the Court ordered the IAD complaint produced for an in camera review. (*Id.*) After conducting the in camera review this Court declined to order Defendant St. Louis Board of Police Commissioners to produce the IAD complaint. [Docket No. 95.]

Thereafter, Defendant Pickering filed a Motion for Summary Judgment. [Docket No. 92.] Defendant Pickering argued that he was entitled to qualified immunity from liability on

Plaintiff's § 1983 claim because Plaintiff could not show probable cause (to issue the search warrant) only existed because of falsehoods or omissions in Defendant Pickering's affidavit. The Court granted Defendant Pickering's Motion, concluding that Plaintiff offered nothing more than his own speculation that Defendant Pickering knowingly provided false information in his affidavit concerning the confidential informant and his own observations. [Docket No. 100.]

Plaintiff appealed to the Eighth Circuit Court of Appeals, arguing that the Court erred in denying of his Motion to Compel and granting summary judgment in favor of Defendant Pickering.[3] [Docket No. 109]; *see also Ladd v. Martin*, 339 Fed. Appx. 660, 660 (8th Cir. 2009). The Eighth Circuit Court of Appeals reversed, in part, the denial of the Motion to Compel, holding that "[a]n in camera review is the appropriate means for the district court to determine whether the [confidential informant]'s identity and communications are essential to [Plaintiff's] claim, while protecting the state's interest in avoiding unnecessary disclosure of the [confidential informant]'s identity." *Id.* at 661. Likewise, the Court of Appeals reversed the grant of summary judgment. The Court of Appeals stated:

> On remand, we instruct the district court to order Pickering to produce for in camera review documentary evidence, if available, of (1) the identity of the confidential informant and (2) any alleged conversations between the informant and Pickering concerning Ladd. The district court is instructed to examine the documents to determine whether the [confidential informant]'s identity and the content of the [confidential informant]'s communications are essential to Ladd's § 1983 claim against Pickering and the police department.

*Id.*

---

[3] Because the Docket in this matter still lists the present case as active with respect to St. Louis Board of Police Commissioners, this Court recommends that an Order be issued directing the Clerk of Court to designate the present case as terminated with respect to the St. Louis Board of Police Commissioners.

6

On remand, the Court issued an Order consistent with the Eighth Circuit Court of Appeal's instruction. [Docket No. 112.] In response, Defendant Pickering provided the Court with an affidavit that stated, in part, as follows:

> 2. In 2002, I made the acquaintance of a man named Robert. He came to the lobby of Police Headquarters and asked to speak to a detective. I was called and responded to speak with him. He provided information that I confirmed and passed along to the Narcotics division.
>
> 3. Robert was an African-American male, with short black hair, and at that time, I estimated his age to be in the mid-forties, possibly early fifties. Robert told me his last name when we met but thereafter, I knew him as Robert. I do not recall his last name. After our initial meeting at headquarters, I only met Robert one or two more times face to face. Otherwise, we spoke on the phone.
>
> 4. I did not know where Robert lived. I was under the impression that he was homeless because I did not have a phone number for him, he always called me.
>
> 5. I did not keep notes or records of my conversations with Robert. When Robert would contact me, if his information was related to narcotics, I would follow up on his information and then pass it along to the Narcotics division. I did this approximately three or four times.
>
> 6. With respect to the plaintiff, my affidavit in support of my search warrant accurately reflects the conversation I had with Robert regarding [Plaintiff].
>
> 7. I believe that Robert is deceased and that he died shortly before the end of 2003. At the beginning of each shift, we receive "nightlies." They were nightly reports of events that happened in the city the previous evening. Near the end of 2003, I saw a name I believed was Robert's listed under a homicide on one of the nightlies. I have not had any further contact with Robert since September 2003 . . . .

[Docket No. 114-1.]

The Court instructed the parties to discuss the issue of whether any additional discovery was needed in light of Defendant Pickering's affidavit. [Docket NO. 114.] The Court also noted:

> Pickering produced no documents with his Affidavit. The Court assumes, therefore, that neither he nor the St. Louis Metropolitan Police Department possesses documents showing (1) the identity of the confidential informant or (2) any alleged conversation between the informant and Pickering concerning Ladd. *If such documents do in fact exist, they must be produced forthwith* for in camera review.

[Docket No. 14, at n.1.]

Based upon this Affidavit, Plaintiff requested leave to conduct additional discovery [Docket No. 116], which this Court granted. [Docket No. 120.] In connection with this discovery, Plaintiff learned that his IAD "file was purged consistent with Department policy on IAD records retention because after the internal investigation was complete, the charges were 'not sustained.'" [Docket No. 137-4.]

On July 15, 2010, Plaintiff filed a Motion to Compel, seeking an order compelling Defendant Pickering to produce his cellular telephone records for the periods during which he was investigating and conducting surveillance on Plaintiff, and an unredacted copy of the new policy of the St. Louis Metropolitan Police Department and the Police Board of Commissioners with respect to destroying or purging information while a law suit is pending. [Docket No. 136.]

There was a hearing on the Motion to Compel and this Court directed Defendant Pickering to provide this Court with an unredacted copy of the new policy concerning purging information for in camera review. [Docket No. 143.] As to the cellular telephone records, the following colloquy between the Court and Defendant Pickering's counsel is relevant:

> MS. CERESIA: The board has cell phone records from 2003. However, there's like 2000 pages of records. They are not individual to any particular officer or even any particular unit. And we have no record—there is no record, we've searched—of Pickering's cell phone number for the period in question seven years ago. And without a cell phone number it's impossible to locate his specific, you know, portion . . . within those 2000 pages of records.

> THE COURT: Well, let me ask about the telephone number. Why can't you learn what the telephone number was?
>
> MS. CERESIA: They just don't have it. It's just not there. There's no record of it.
>
> THE COURT: Wouldn't he be privy to that?
>
> MS. CERESIA: He doesn't recall it. I mean, they changed phone carriers, he switched divisions. I mean, we're talking about this is from seven years ago. No one has it. No one remembers it. There's—it's not documented anywhere.

(Hr. Tr. 4:7-24 (Aug 6, 2010).)

## III. DISCUSSION

### a. Motion to Compel

District courts have broad discretion to decide discovery motions. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993). This broad discretion is embodied in the Federal Rules of Civil Procedure. Rule 26(b)(1) states: "For good cause, the court may order discovery of *any matter* relevant to the subject matter involved in the action." (Emphasis added.) Furthermore, Fed. R. Civ. P. 34(a) provides: "A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, . . . ['any designated document'] in the responding party's possession, custody, or control."

This Court concludes that Defendant Pickering's cellular telephone number from the time in question and telephone records for Defendant Pickering's cellular telephone from the time in question are relevant and discoverable. Therefore, Defendant Pickering is ordered to immediately produce this information if such information is within his custody or control. Based upon Ms. Ceresia's representations, this Court does not anticipate that Defendant Pickering has any records to produce.

9

The party asserting the attorney-client privilege has the burden to provide a factual basis for the privilege or protection. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985); *In re Grand Jury Proceedings*, 655 F.2d 882, 887 (8th Cir. 1981). When a federal court has federal-question jurisdiction over a claim, federal common law applies to questions of privilege. Fed. R. Evid. 501. "[C]onfidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977).

> "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*Id.* at 601-02 (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D.Mass.1950)). The term "communication" does not apply to the "disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 685-86 (1981). Communications that do not contain confidential information and only reveal the relationship between the parties are not protected by the attorney-client privilege. *Diversified Industries, Inc.*, 572 F.2d at 603 (en banc).

The work-product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947), and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Simon*, 816 F.2d at 400. Rule 26(b)(3) generally precludes discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

representative," but permits discovery if the documents and tangible things "are otherwise discoverable under Rule 26(b)(1) . . . and . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

Defendant Pickering redacted from an e-mail chain the names of the individuals who were part of the e-mail chain and the name of another case concerning the St. Louis Board of Police Commissioners. Having reviewed the redacted document, this Court concludes that the redacted information is reasonably calculated to lead to the discovery of admissible evidence and the redacted information is not subject to the attorney-client privilege or work-product protection. First, names of individuals who are parties to a communication are never protected by attorney-client privilege. Second, this redacted information does not reveal any request for legal advice. Third, the redacted information does not in any way reflect work undertaken in preparation for litigation. Therefore, this Court orders Defendant Pickering to immediately produce an unredacted copy of the e-mail chain to Plaintiff.

### b. Spoliation

Spoliation is the "intentional destruction, mutilation, alteration, or concealment of evidence." *Black's Law Dictionary* 1409 (7th ed. 1999). Sanctions for spoliation of evidence may be imposed under a federal court's inherent powers. *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir.1993). The Eighth Circuit Court of Appeals has cited two comparable tests: First, "'[s]anctions are appropriately levied against a party responsible for causing prejudice when the party knew or should have known that the destroyed documents were relevant to pending or potential litigation.'" *Id.* at 267 (quoting *Capellupo v. FMC Corp.*, 126 F.R.D. 545 (D. Minn. 1989)). Second, "'[s]anctions may be imposed against a litigant who is on notice that documents

and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.'" *Id.* at 267 (quoting *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D.Cal.1984)).

On September 17, 2003, Defendant Pickering allegedly conferred with a confidential informant who indicated that drug and gun activity was occurring at Plaintiff's residence. (Compl. at ¶ 13.) According to Defendant Pickering's affidavit in support of the search warrant, the confidential informant "ha[d] provided [Defendant Pickering] with information in the past [(i.e., before September 17, 2003)]. This information . . . led to the arrest of three persons for possession of illegal drugs. One of the subjects has been convicted, with the other two cases [were] currently pending in the court system." [Docket No. 91.] A judge signed the search warrant based upon this affidavit. A search of Plaintiff's home was executed and Plaintiff was placed in custody for almost three months. On July 5, 2004, Major Nocchiero, Secretary for the Board of Police Commissioners in St. Louis, wrote: "In response to your allegation that Detective Pickering lied about having a confidential informant, a check by the IAD investigators confirmed that this particular informant is documented in the files of the division and is known to the supervisor and commander of the division." Plaintiff commenced the present action on June 6, 2005.

Plaintiff has only been provided with Defendant Pickering's affidavit. Defendant has not identified an individual who has any knowledge as to the identity of the confidential informant. Defendant has not identified any document that contains any information about the confidential informant despite the fact that the confidential informant supposedly was involved in three other cases with Defendant Pickering, Major Nocchiero stated "that this particular informant is

documented in the files of the division and is known to the supervisor and commander of the division"; and the confidential informant was likely the subject of a police report because he was a subject of homicide of which the St. Louis Metropolitan Police Department was aware.

Instead of discovering relevant information, Plaintiff has learned through discovery that the St. Louis Metropolitan Police Department purged Plaintiff's IAD file; neither Defendant Pickering nor anyone else who works for the St. Louis Metropolitan Police Department and who has been deposed in connection with this matter can remember anything concerning the confidential informant; and any record of Defendant Pickering's cellular telephone number no longer exist. Based upon this record, this Court finds that there has been spoliation of evidence. Specifically, there has been spoliation of documentation concerning the confidential informant, Plaintiff's IAD file, and Defendant Pickering's cellular telephone records. Defendant Pickering was aware of the need to hold relevant documents when he was served with the initial Complaint and Plaintiff has been prejudiced by the destruction evidence in this case.

Plaintiff's Motion to Compel did not address the issue of spoliation. As a result, Defendant Pickering did not brief the issue of spoliation or the issue of sanctions. *See, e.g.*, *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 552-53 (D. Minn. 1989). Furthermore, the record is not sufficiently developed for this Court to conclude (1) when the spoliation occurred; (2) whether all of the spoliation can be attributable to Defendant Pickering; and (3) whether Defendant Pickering was on notice of the potential for litigation before Defendant Pickering was served with the initial Complaint.

There is a hearing on Defendant Pickering's Second Motion for Summary Judgment set for Wednesday, September 22, 2010, at 11:00 a.m. in the 3 North Courtroom of the Thomas F. Eagleton Courthouse, 111 South 10th Street, St. Louis, MO 63102. This Court recommends that

the parties be permitted to submit briefing and supplement the record on the issue of spoliation. This Court further recommends that the parties be permitted to be heard on the issue of spoliation at the hearing on September 22, 2010.

## IV. ORDER & RECOMMENDATION

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Discovery [Docket No. 136] is **GRANTED** as follows:

1. Defendant Pickering is ordered to immediately produce to Plaintiff Defendant Pickering's cellular telephone records for the periods during which he was investigating and conducting surveillance of Plaintiff to the extent that these records are in Defendant Pickering's custody or control; and

2. Defendant Pickering is ordered to immediately produce to Plaintiff an unredacted copy of the e-mail chain that was provided to this Court for in camera review.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY RECOMMENDED** that an Order be issued:

1. Setting forth a briefing schedule and parameters for the issue of spoliation;

2. Setting a hearing on the issue of spoliation for Wednesday, September 22, 2010, at 11:00 a.m. in the 3 North Courtroom of the Thomas F. Eagleton Courthouse, 111 South 10th Street, St. Louis, MO 63102;

3. Instructing the Clerk of Court to designate the action against United States Attorney James Martin, Assistant U. S. Attorney John Ware, Chief Joseph Mokwa, Lieutenant Ronnie Robinson, Detective Scott McKelvey, Detective Michael Nicholson, Detective

Clifford States, Detective Carlos Ross, Detective Robert Ogilvie, and Special Agent Michael Ramos as "terminated" as of May 30, 2006;

4. Instructing the Clerk of Court to designate the action against Mayor Francis Slay as "terminated" on April 28, 2006; and

5. Instructing the Clerk of Court to designate the present action against the St. Louis Board of Police Commissioners as "terminated" as of October 4, 2006.

Dated:     8/26/10

                s/ Arthur J. Boylan
Magistrate Judge Arthur J. Boylan
United States District Court