# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

Abu Bakr Ladd,

          Plaintiff,

No. 4:05-CV-916-UNA (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

v.

Jeffrey Pickering,

          Defendant.

Anser Ahmad, Ahmad Law Office, P.C., Harrisburg, Pennsylvania, for Plaintiff.

Dana C. Ceresia, Assistant Attorney General, St. Louis, Missouri, for Defendant.

This Section-1983 action arises out of the September 25, 2003, search of Plaintiff Abu Bakr Ladd's home and his subsequent arrest. Although the investigating officer, Defendant Jeffery Pickering, obtained a warrant prior to the search, Ladd alleges that Pickering violated the Fourth Amendment by including deliberate falsehoods in his search-warrant affidavit. Presently before the Court is Pickering's Second Motion for Summary Judgment. For the reasons that follow, the Court will deny the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2003, an agent working with a federal anti-terrorism task force contacted a friend, St. Louis Metropolitan Police Department ("SLMPD") detective Scott McKelvey, and asked McKelvey if he was familiar with Ladd. (Pickering 2007 Dep. Tr. at 17-18.)

McKelvey, in turn, contacted Pickering, a detective in the SLMPD intelligence division, to ascertain whether Pickering was familiar with Ladd. (Id. at 17.) Pickering then contacted several confidential informants with whom he had worked in the past and asked them whether they knew Ladd; none did. (Id.)

According to Pickering, approximately two months later, a confidential informant contacted him about an unrelated matter. (Id. at 21-22.) Pickering asked the informant whether he was familiar with Ladd, and the informant stated that he knew him, had been in his house, knew that he possessed firearms and narcotics there, and knew that he sold narcotics there. (Id. at 23.) Pickering then asked the informant to gather as much information as possible about Ladd. (Id.)

Pickering contends that on September 17, 2003, the informant again contacted him and advised him that Ladd had narcotics and firearms in his house at that time. (Id.) He also advised Pickering of the manner in which Ladd sold narcotics. (Id. at 36-37.) On September 19, 2003, Pickering allegedly conducted surveillance on Ladd's residence and observed three people approach the home, knock on the door, enter, and then leave a short time later. (Id. at 40-41.)

Pickering claims to have conducted further surveillance on Ladd's residence on September 23, 2003. He asserts that he observed Ladd pull up to his home in a pickup truck and carry inside a long item that appeared to be covered with a blanket; Pickering believed the item was a rifle or a shotgun. (Id. at 44; Def. Ex. A.) Later that day, the

informant again contacted Pickering and told him that he had just left Ladd's home and that he had seen narcotics and firearms there. (Id. at 46-47.)

In light of the foregoing, Pickering prepared an affidavit in support of a search warrant for Ladd's residence (the "Search Warrant Affidavit"). Because of its critical importance to this case, the Court recites below the Search Warrant Affidavit in its entirety:

> I, Detective Jeffrey Pickering, DSN 5053, assigned to the Intelligence Division, being a duly sworn and authorized member of the Metropolitan St. Louis Police Department since September 13, 1997, do hereby swear, attest and affirm;
>
> On 9/17/03 a confidential informant contacted me and advised that Crack Cocaine and firearms are being sold from the residence at 4225 Labadie. He/she identified the source of the individual known to him/her as Ubu Ladd. Ubu Ladd is described as a white male subject in his early 50's. Ladd is approximately 5'06", weighing 200 lbs. A further investigation revealed Ubu Ladd as follows:
>
>> William Gallop
>> AKA: Abu Bakr Ladd
>> W/M DOB: XX/XX/48
>> SS#: XXX-XX-4813[1]
>> 5'6", 200 lbs.
>
> He/she stated that Ladd sells Crack and firearms. The sales are conducted in the following manner: A customer approaches the front door of the residence and knocks on the door. Ladd answers the door and allows the customer into the residence to place his/her order. After Ladd receives the money, he retrieves the narcotics or firearms from one of several hiding places inside the residence. After receiving their purchase the customer then leaves the residence.

---

[1] The Court has redacted Ladd's date of birth and social-security number. See Fed. R. Civ. P. 5.2.

> It should be noted that William Gallop, AKA Abu Bakr Ladd, is a convicted felon. In 1977, Ladd was convicted of Robbery 1st in Sacramento California.
>
> My informant has been inside 4225 Labadie on numerous occasions and has observed crack cocaine and numerous firearms on each occasion.
>
> My informant has provided me with information in the past. This information has led to the arrest of three persons for possession of illegal drugs. One of the subjects has been convicted, with the other two cases currently pending in the court system.
>
> On 9/19/03, I conducted a surveillance of 4225 Labadie. During my surveillance I observed three transactions as described [by] the informant.
>
> On 9/23/03, I again conducted surveillance of 4225 Labadie. During my surveillance, I observed Ladd exit a pick-up truck carrying a long item covered with what appeared to be a blanket. He then entered the residence.
>
> On 9/23/03, my informant again contacted me. He/she stated that he/she had just left the residence at 4225 Labadie where he/she had observed Ladd to be in possession of cocaine base and firearms.
>
> 4225 Labadie is described as a two-story brick structure, single-family residence. The address is clearly marked 4225 on the front of the residence.
>
> Considering the information supplied by my informant and considering my own personal observations, it is my belief that Cocaine and Firearms are being sold from and stored at the residences located at 4225 Labadie. This residence is located in the City of St. Louis.

(Def. Ex. A.) Pickering presented the Search Warrant Affidavit to a state-court judge on September 24, 2003, and the judge issued a search warrant. (Def. Ex. D.)

Pickering and nine other police officers executed the search warrant the following day. They first knocked on Ladd's door and announced that they were police officers with a search warrant; they received no response. The officers then broke open the front door and entered the residence. They secured Ladd and the other persons inside (Ladd's

wife and son) and then asked Ladd if he had any narcotics or firearms in the house. Ladd responded, "No, I don't know what you're talking about." Officers then searched the house, finding two loaded handguns and two semi-automatic rifles. (Def. Ex. B.) Officers also found pills and other powder spread around Ladd's residence, which turned out to be homeopathic medicines and not narcotics. (Pickering 2007 Dep. Tr. at 44-45.)

Ladd was then placed under arrest for being a felon in possession of a firearm; ultimately, he was transferred to federal authorities for prosecution for that crime, and he was later indicted on that charge. (Def. Ex. B.) He remained in federal custody for several months. During the course of his criminal case, he requested a Franks hearing, alleging that Pickering had fabricated the informant and had made false statements in the Search Warrant Affidavit. (Ladd 2007 Dep. Ex. C.)[2] Before a Franks hearing could be held, however, the Government dismissed the case against him.

On January 15, 2004, Ladd filed an "Allegation of Employee Misconduct Report" with the Internal Affairs Division ("IAD") of the SLMPD. (Am. Compl. Ex. L.) In that Report, he alleged that Pickering had manufactured the information contained in the Search Warrant Affidavit. (Id.) On June 2, 2004, the IAD issued a written recommendation that the complaint be "not sustained." (Pickering 2007 Dep. Ex. 2.) Ladd appealed that recommendation to the St. Louis Board of Police Commissioners

---

[2] Franks v. Delaware, 438 U.S. 154 (1978), held that a defendant in a criminal case is entitled to a hearing if he makes a substantial showing that a false statement was knowingly and intentionally made by a police officer in a search-warrant affidavit.

("BPC"), which upheld the IAD's recommendation. (Am. Compl. Exs. O-P.) It informed Ladd that the IAD had "confirmed" that an informant existed, who was "documented in the files of" the IAD. (Id. Ex. P.) It also informed him that the informant was "murdered shortly after the investigation involving you was completed and as such can not be interviewed by our IAD investigators." (Id.)

On June 3, 2005, Ladd commenced this action against the BPC, Pickering, and several others, alleging four claims: (1) unreasonable search and seizure in violation of the Fourth Amendment, (2) malicious prosecution, (3) false imprisonment, and (4) civil conspiracy. The gravamen of his Complaint was that Pickering fabricated the informant as a guise to obtain entry into his home, ostensibly because authorities suspected he was a terrorist. He further alleged that the BPC and others had conspired to cover-up their knowledge that no informant in fact existed. He later amended his Complaint, but those amendments did not change the substance of his claims.

Several Defendants subsequently moved to dismiss, and the Court granted their Motions for reasons not pertinent here; the only claim left remaining in the case was the Fourth-Amendment claim against Pickering. The parties then conducted discovery, during which Ladd asked Pickering to identify the informant. Pickering refused, invoking the law-enforcement privilege.[3] Ladd moved to compel that information, but his Motion

---

[3] This privilege permits a law-enforcement officer to withhold the identity of an informant. It "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Mitchell v. Bass, 252 F.2d 513, 516 (8th Cir. 1958).

was denied by Magistrate Judge Boylan and affirmed by the undersigned. (See Doc. Nos. 86, 91.)

Pickering then moved for summary judgment. In response, Ladd all but conceded that he lacked any evidence that the Search Warrant Affidavit contained deliberate falsehoods, but he blamed that failure on the Court's denial of his Motion to Compel. (See Doc. No. 98 at 9-10.) Due to the absence of evidence that Pickering had fabricated the informant, the Court granted his Motion and dismissed this action.

Ladd appealed, and the Eighth Circuit reversed and remanded, concluding that the Court had erred in denying the Motion to Compel and, as a result, had also erred in granting the summary-judgment Motion. It instructed this Court on remand to "order Pickering to produce for in camera review documentary evidence, if available, of (1) the identity of the confidential informant and (2) any alleged conversations between the informant and Pickering concerning Ladd." (Doc. No. 109 at 2.) It further ordered this Court to "examine the documents to determine whether the [informant's] identity and the content of the [informant's] communications are essential to Ladd's § 1983 claim." (Id.) On September 25, 2009, the Court issued an Order consistent with the Eighth Circuit's judgment, directing Pickering to produce documents identifying the informant and memorializing any conversations between the informant and Pickering. (See Doc. No. 112.)

In response, Pickering filed an *ex parte* affidavit with the Court, dated October 24, 2009 (the "October 24 Affidavit"), in which he averred in pertinent part:

7

> In 2002, I made the acquaintance of a man named Robert. He came to the lobby of Police Headquarters and asked to speak to a detective. I was called and responded to speak to him. He provided information that I confirmed and passed along to the Narcotics division.
>
> Robert was an African-American male, with short black hair, and at that time, I estimated his age to be in the mid-forties, possibly early fifties. Robert told me his last name when we met but thereafter, I knew him as Robert. I do not recall his last name. After our initial meeting at headquarters, I only met Robert one or two more times face to face. Otherwise, we spoke on the phone.
>
> I did not know where Robert lived. I was under the impression that he was homeless because I did not have a phone number for him, he always called me.
>
> I did not keep any notes or records of my conversations with Robert. When Robert would contact me, if his information was related to narcotics, I would follow up on his information and then pass it along to the Narcotics division. I did this approximately three or four times.
>
> With respect to the plaintiff, my affidavit in support of my search warrant accurately reflects the conversations I had with Robert regarding Mr. Ladd.
>
> I believe that Robert is deceased and that he died shortly before the end of 2003. At the beginning of each shift, we received "nightlies." They were nightly reports of events that happened in the city the previous evening. Near the end of 2003, I saw a name I believe was Robert's listed under a homicide under one of the nightlies. I have not had any further contact with Robert since September 2003 as described in my affidavit.

(Doc. No. 114.) After reviewing the October 24 Affidavit, the Court determined that it did not contain sensitive material and that it would be crucial to Ladd's claim. Accordingly, the Court ordered that it be provided to Ladd (to which Pickering did not object). (See id.)

The parties then engaged in additional discovery. With that discovery now complete, Pickering again moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

Pickering argues that he is entitled to qualified immunity on Ladd's claim. When analyzing whether a police officer is entitled to qualified immunity, a court must conduct a two-part inquiry. First, it must assess whether the facts alleged, when viewed in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right. If a violation could be established based on those facts, the court must then determine whether the constitutional right at issue was clearly established at the time the violation occurred. E.g., Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004).[4]

Here, the constitutional right at issue is the right to be free from searches without a warrant based upon probable cause. "It is clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause before [a] warrant can issue." Moody v. St. Charles Cnty., 23 F.3d 1410, 1412 (8th Cir. 1994); accord, e.g., Mueller v. Tinkham, 162 F.3d 999, 1003 (8th Cir. 1998). "Information in an affidavit to establish probable cause must be truthful in the sense that the information put forth is 'believed or appropriately accepted by the affiant as true.'" Moody, 23 F.3d at

---

[4] In Pearson v. Callahan, 129 S. Ct. 808, 818 (2009), the Supreme Court held that this two-step inquiry, which emanated from the seminal case of Saucier v. Katz, 533 U.S. 194 (2001), is "no longer . . . mandatory." Under Pearson, courts are now free (but are not required) to skip the first step and proceed directly to whether the constitutional right at issue was clearly established on the day in question. Id. Here, however, there is no dispute that the right in question (discussed in more detail below) was clearly established on September 25, 2003, the day Ladd's home was searched. The instant Motion, instead, turns on the answer to the first question: whether the facts would permit a jury to conclude that Pickering violated Ladd's constitutional rights.

1412 (quoting Franks v. Delaware, 438 U.S. 154, 165 (1978)). A warrant "based upon an affidavit containing deliberate falsehood[s] . . . violates the Fourth Amendment." Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996) (internal quotation marks and citation omitted). Hence, a police officer may be held liable under 42 U.S.C. § 1983 if he obtains a warrant based upon a deliberately false statement to the issuing judge. Id.

Pickering argues that he is entitled to qualified immunity because no Fourth-Amendment violation can be found on the record here. Specifically, he asserts that (1) Ladd lacks evidence that he fabricated the existence of the informant and (2) even if the informant had been fabricated, the Search Warrant Affidavit contains sufficient other information to support a finding of probable cause. The Court disagrees.

As to Pickering's first argument, Ladd must substantiate his claim of a fabricated informant with "sufficient probative evidence [to] permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Moody, 23 F.3d at 1412. The Court need not look further than Pickering's October 24 Affidavit to find such evidence. In the Search Warrant Affidavit, Pickering claimed to have relied on the informant three times previously, including in at least one instance that resulted in a narcotics conviction. That same informant, according to Pickering, had contacted him on multiple occasions. Yet, in the October 24 Affidavit, Pickering claims that he had no way to contact the informant; knew only his first name; had no address or telephone number for him; and never documented their conversations. Charitably speaking, these assertions strain credulity,

given the informant's obvious importance with respect to both Ladd's case and the prior cases in which he supposedly "snitched."

Simply put, a jury could conclude, based on the October 24 Affidavit, that Pickering had fabricated the informant. The dearth of information Pickering allegedly possessed about him – no last name, no address, no telephone number, a bare-bones physical description – would make it nigh impossible for anyone to track him down, a "convenient" fact. More troubling, the (alleged) informant supposedly was murdered shortly after Ladd's arrest. This latter fact also is "convenient" and, when combined with the remaining vague statements in the October 24 Affidavit, makes the informant's existence simply "'too fishy,' or, put another way, 'too convenient,' to allow summary judgment in [Pickering's] favor." Valentino v. Vill. of S. Chi. Heights, 575 F.3d 664, 674 (7th Cir. 2009).[5]

Pickering argues that the informant's existence can be inferred from the fact that drugs (although not illegal narcotics) and firearms ultimately were found in Ladd's home, as the informant had indicated. (Def. Mem. at 11.) While this might *suggest* that the informant indeed existed, it does not *mandate* that conclusion. The inference Pickering asks the Court to draw – the informant existed because drugs and guns were found in Ladd's home – certainly is reasonable. But so, too, is the inference that *Ladd* asks the

---

[5] Also "convenient" is the fact that, according to Pickering, no one would be able to produce records of the other cases in which the informant allegedly provided information. (Pickering 2010 Dep. Tr. at 78-79.)

12

Court to draw: Pickering is lying, based on the sketchy averments in his Affidavits. Summary judgment must be denied under these circumstances, as the record is susceptible to competing, reasonable inferences that must be resolved by a jury. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986); Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1338 (8th Cir. 1997) ("[J]udgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party.") (internal quotation marks and citation omitted).

Pickering next argues that even if the informant's information were removed from the Search Warrant Affidavit, sufficient information would remain to support a finding of probable cause. It is true that, if the "material that is the subject of the alleged falsity . . . is set to one side [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause," no constitutional violation arises. Franks, 438 U.S. at 171-72; accord, e.g., Bagby, 98 F.3d at 1099. But there are several reasons why this rule does not apply here.[6]

---

[6] The Eighth Circuit has questioned whether a police officer who lied in a warrant affidavit may *ever* seek qualified immunity when the non-fabricated portion of the affidavit establishes probable cause. Bagby, 98 F.3d at 1099 n.2 (expressing no view whether "a defendant whose affidavit contained a deliberate falsehood should be entitled to qualified immunity if a corrected affidavit would still provide probable cause," but positing that a "more stringent rule *may be appropriate* when a liar seeks the benefit of this defense") (emphasis added). The Court need not adopt such a *per se* rule here, as it finds the entire Search Warrant Affidavit is susceptible to challenge.

13

As an initial matter, the "remaining" information in the Search Warrant Affidavit is suspect. With material from the informant removed, all that remains is Pickering's surveillance of Ladd's residence. The Affidavit contains no other corroborating information, such as physical evidence obtained during the course of the investigation or incriminating evidence from some other source, such as a different informant or another police officer. Because a jury could reasonably conclude that Pickering lied about the existence of the confidential informant, it could also conclude that he lied about his surveillance of Ladd's residence. See United States v. Phillips, 522 F.2d 388, 391 (8th Cir. 1975) (approving jury instruction stating that "if you believe any witness testified falsely as to any material issue in this case, then you must reject that which you believe to be false, *and you may reject the whole or any part of the testimony of such witness*") (emphasis added). If a jury were to so conclude, the entire Search Warrant Affidavit would be undermined and probable cause necessarily would be lacking.

Moreover, Ladd has pointed to evidence conflicting with certain of Pickering's alleged observations. For instance, he notes that Pickering claimed to have observed, on September 19, 2003, several drug buys in the manner described by the informant.[7] Yet, both Ladd and his wife testified in their depositions that no adults entered their home on that day. (Aziz-Ladd 2010 Dep. Tr. at 8-9; Ladd 2007 Dep. Tr. at 37.) Similarly, Ladd

---

[7] It is difficult to comprehend how Pickering could have "observed three transactions as described [by] the informant" when the transactions, by the informant's own reckoning, occurred *inside* Ladd's home. (Def. Ex. A.)

14

points out that he and his wife left for a trip to Kentucky on the morning of September 19, but Pickering did not begin his shift until after they had departed, meaning that he could not have observed what he claimed he did. (Ladd 2007 Dep. Tr. at 24-37; Pickering 2007 Dep. Tr. at 53.) Although Pickering testified in his deposition that it was a common practice for police officers to conduct surveillance "off the clock" and that is what happened here (id.), a jury might reasonably question that assertion.

Regardless, even if the "remaining" information in the Search Warrant Affidavit were in fact truthful, in the Court's view it would be insufficient to establish probable cause. Pickering notes that in the Search Warrant Affidavit, he averred that (1) Ladd had a prior felony conviction and (2) he observed Ladd "carrying a long item covered with what appeared to be a blanket" into his home. (Def. Mem. at 11-12.) He now claims this is sufficient to establish probable cause that Ladd was a felon in possession of a firearm. (Id.) But that conclusion requires too much of an inferential leap; a "long item covered with . . . a blanket" could be anything, and certainly need not be a firearm. See, e.g., United States v. Taylor, 599 F.2d 832, 836-37 (8th Cir. 1979) (conclusion supported only by suspicion insufficient for warrant to issue); Gillespie v. United States, 368 F.2d 1, 4-6 (8th Cir. 1966) (same).

Pickering notes that in his deposition, he testified that he believed (based on his law-enforcement experience) that the item was a firearm. Yet, he did not include that information in the Search Warrant Affidavit. Had he so informed the issuing judge, perhaps the issue would be closer. But without that information, all the Search Warrant

15

Affidavit establishes is that Ladd brought some unknown large object into his home. This is simply not enough. Pickering also testified in his deposition that he was aware of Ladd's 1993 firearms arrest.[8] But this information also was omitted from the Search Warrant Affidavit, and therefore it, too, cannot factor into the probable-cause calculus.

For all of these reasons, the Court concludes that a reasonable jury could find that Pickering fabricated information in the Search Warrant Affidavit and, with that information removed, the remainder of the Affidavit would not establish probable cause. Accordingly, Pickering has failed to show that he is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendant Pickering's Second Motion for Summary Judgment (Doc. No. 134) is **DENIED.**

Dated: September 29, 2010 

s/Richard H. Kyle  
RICHARD H. KYLE  
United States District Judge

---

[8] Ladd was arrested by the St. Louis police in 1993 and charged with armed criminal action, unlawful use of a weapon, and discharge of a weapon within city limits. Those charges were later dismissed.

16