## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

---

Abu Bakr Ladd,

                Plaintiff,          No. 4:05-CV-916-UNA (RHK/AJB)
                                        **MEMORANDUM OPINION AND ORDER**

v.

Jeffrey Pickering,

                Defendant.

---

Anser Ahmad, Ahmad Law Offices, P.C., Harrisburg, Pennsylvania, for Plaintiff.

Dana C. Ceresia, Missouri Attorney General's Office, St. Louis, Missouri, for Defendant.

---

       This matter is before the Court on (1) Defendant Jeffrey Pickering's Motion for

Judgment as a Matter of Law After Judgment on the Verdict or, in the Alternative,

Motion for New Trial (Doc. No. 226), and (2) Plaintiff Abu Bakr Ladd's Motion for an

Award of Reasonable Attorney's Fees, Litigation Costs, Expenses and Interest (Doc. No.

224).  For the reasons set forth below, Pickering's Motion will be denied and Ladd's

Motion will be granted in part and denied in part.

### BACKGROUND

       The background in this case has been set forth extensively in the Court's prior

opinions and will not be repeated here; familiarity with those opinions is assumed.  See,

e.g., Ladd v. Pickering, No. 4:05-CV-916, 2010 WL 3892139 (E.D. Mo. Sept. 29, 2010).

Following the denial of Pickering's Motion for Summary Judgment, trial before the

undersigned and a jury took place between December 3, 2010, and December 8, 2010. The jury awarded Ladd $5,000 in compensatory damages and $25,000 in punitive damages, having determined that Pickering had lied in the search-warrant affidavit at the heart of this case.  On December 10, 2010, the Court adopted the jury's verdicts, and the Judgment was entered that same day.

Pickering now moves for judgment as a matter of law, arguing that the jury did not have "a legally sufficient evidentiary basis from which to conclude that [the] search warrant was unlawful."  (Def. Mem. at 3.)  He also argues, in the alternative, entitlement to a new trial due to several evidentiary errors allegedly committed by the Court and a "flawed" verdict form.  (Id. at 3-9.)  Ladd has moved for an award of attorneys' fees, costs, and expenses.  (Doc. No. 224.)  The Court addresses these Motions in turn.

## I.      Judgment as a matter of law

Pickering first argues that he is entitled to judgment as a matter of law for "the reasons set forth more fully in [his] motion for directed verdict at the close of plaintiff's evidence and the close of all evidence."  (Def. Mem. at 3.)  That earlier Motion asserted that Ladd had "failed to provide sufficient evidence showing that Pickering's statements" in the search-warrant affidavit were "deliberately false," because he offered nothing more than "inconsistent testimony as to his whereabouts on September 19, 2003 and testimony regarding the amount of traffic in and out of his house."  (Doc. No. 212 at 1-2.)  The Court orally denied the earlier Motion, and it perceives no reason to reach a different result here.

Suffice it to say, Pickering grossly mischaracterizes the evidence presented at trial. Most notably, he overlooks that Ladd *expressly* and *unambiguously* testified that several of the matters described in the search-warrant affidavit were untrue.  (See, e.g., Trial Tr. Vol I at 83 ("Q:  And on 9-19, which is the date [in the search-warrant affidavit], were there any transactions or three transactions as Mr. Pickering offers in this probable cause affidavit? * * * A:  No."); id. at 85 (denying engaging in any type of transaction in his home); id. at 87 (denying that males enter his home due to his religious beliefs); id. at 88 ("Q:  Were there any individuals that you were selling any items to from your house?  A:  No, sir."); id. at 92 ("Q:  So on the 23rd of September, was anyone at your house?  A:  No, sir.  Q:  This probable cause affidavit indicates that Mr. Pickering observed you exit a pickup truck carrying a long item.  A:  Well, he's wrong.  He's lying."); id. at 93 (denying that he carried anything out of his truck covered in a blanket).)  This testimony alone is sufficient to sustain the jury's verdict.  Moreover, as the Court previously noted when denying Pickering's Motion for Summary Judgment, other evidence supports the jury's conclusion that Pickering lied about the confidential informant, including the "sketchy" facts described in the search-warrant affidavit and that the affidavit was internally inconsistent.  See 2010 WL 3892139, at *6.

"A grant of judgment as a matter of law following a jury verdict is appropriate only when the evidence is *entirely insufficient to support the verdict*."  Garcia v. City of Trenton, 348 F.3d 726, 727 (8th Cir. 2003) (emphasis added) (internal quotation marks and citation omitted).  Such a motion can be granted only if "all of the evidence points one way and is susceptible of *no reasonable inference* sustaining" the non-movant's

claims.  Manus v. Am. Airlines, Inc., 314 F.3d 968, 972 (8th Cir. 2003) (emphasis added).  This "high standard" is designed to prevent courts from usurping the jury's function in assessing credibility and determining what inferences are to be drawn from the evidence.  Garcia, 348 F.3d at 727; Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 702 (8th Cir. 2001).  Those concerns are particularly heightened in a case such as this, which was, in essence, a "he said, she said" case.

The evidence recited above provided ample support for the jury's verdict.  The Motion for Judgment as a Matter of Law will be denied.

## II.    Motion for new trial

Pickering argues in the alternative that the Court's "erroneous" evidentiary rulings and "flawed" verdict form entitle him to a new trial.  A new trial on the basis of evidentiary errors is warranted only when those errors were so prejudicial that a new trial, absent the errors, "would be likely to produce a different result."  Pointer v. DART, 417 F.3d 819, 822 (8th Cir. 2005) (citation omitted); see also Fed. R. Evid. 103(a).  Moreover, "[n]o error in either the admission or the exclusion of evidence . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice."  Harris v. Chand, 506 F.3d 1135, 1138 (8th Cir. 2007) (quoting McPheeters v. Black & Veatch Corp., 427 F.3d 1095, 1100 (8th Cir. 2005)); accord Fed. R. Civ. P. 61.  As for the allegedly "flawed" verdict form, a new trial is warranted only if the form failed to "fairly and adequately submit[] the issues in the case to the jury."  Gasper v. Wal-Mart Stores, Inc., 270 F.3d 1196, 1200 (8th Cir. 2001).

After careful consideration, and for the reasons that follow, the Court concludes

that no evidentiary errors were committed and the case was properly submitted to the

jury.

### A.    Hearsay evidence

Pickering first argues that the Court erred in permitting Ladd to testify about his

conversations with FBI agent Luke Adler following his arrest.  In those conversations,

Adler inquired about certain of Ladd's financial transactions and then asked him to work

for the FBI as an informant on the Muslim community.  (Trial Tr. Vol. I at 119-20.)

Pickering argues that Ladd's conversations with Adler were hearsay, but the Court

concludes otherwise.

Hearsay is "a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R.

Evid. 801(c).  A "statement," in turn, is "an oral or written *assertion*."  Fed. R. Evid.

801(a) (emphasis added).  These definitions lay bare the flaw in Pickering's argument.

He complains that Ladd "testified that Adler *inquired* about certain business transactions,

including a receipt of $57,000 from Harris Place, LLC, and that Adler *asked* him if he

would be willing to infiltrate the Islamic Center and serve as an informant."  (Def. Mem.

at 4 (emphases added).)  The transcript confirms Ladd's testimony.  (Trial Tr. Vol. I at

120 ("Q:  At that time what did he say []?  A:  Mr. Adler *asked me* about some business

transactions which he must have somehow . . . found out about [that] I had, had in the last

few – maybe in the last year.  And he *asked me* to justify and explain the financial

transactions.  Q:  Okay.  Aside from that, did he say anything else?  A:  Yes.  He *asked*

*me* [if] I would be willing to go to the Islamic Center and infiltrate them and report back.") (emphases added).)  But questions are not "statements," because they are not "assertions."  Hence, they necessarily fall outside Rule 801's definition of hearsay.  <u>See, e.g.</u>, <u>Lexington Ins. Co. v. W. Pa. Hosp.</u>, 423 F.3d 318, 330 (3rd Cir. 2005) ("Courts have held that questions and inquiries are generally not hearsay because the declarant does not have the requisite assertive intent, even if the question convey[s] an implicit message or provides information about the declarant's assumptions or beliefs.") (internal quotation marks omitted); <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 98 (2d Cir. 1999) ("An inquiry is not an assertion, and accordingly is not and cannot be a hearsay statement.") (internal quotation marks and citation omitted); <u>United States v. Lewis</u>, 902 F.2d 1176, 1179 (5th Cir. 1990) ("The questions asked by the unknown caller, like most questions and inquiries, are not hearsay because they do not, and were not intended to, assert anything."); <u>United States v. Honken</u>, 381 F. Supp. 2d 936, 1000 (N.D. Iowa 2005) (collecting cases).  Moreover, because questions "are neither true nor false," the challenged testimony cannot have been offered "to prove the truth of the matter asserted." <u>Servants of Paraclete, Inc. v. Great Am. Ins. Co.</u>, 866 F. Supp. 1560, 1567 (D.N.M. 1994); <u>accord, e.g.</u>, <u>United States v. Vest</u>, 842 F.2d 1319, 1330 (1st Cir. 1988).

Simply put, there was no hearsay error.

**B.     The dismissal of the criminal charges**

Pickering next argues that the Court erred in permitting the jury to learn that the criminal charge against Ladd had been dismissed.  Courts have reached different conclusions whether the dismissal of a criminal charge is admissible in a subsequent

Section-1983 action arising out of or connected with that charge.  Compare, e.g., Borunda v. Richmond, 885 F.2d 1384, 1388 (9th Cir. 1988), with, e.g., Cardinal v. Buchnoff, No. 06CV0072, 2010 WL 3339509, at *2-3 (S.D. Cal. Aug. 23, 2010).[1]  There is no *per se* rule that such evidence is admissible or inadmissible.

In any event, had the Court erred as Pickering argues, such error was harmless. The Court has reviewed the trial transcript, and there was only passing mention of the charge's dismissal – it certainly was not the focus of Ladd's case.  See, e.g., United States v. Stenger, 605 F.3d 492, 503 (8th Cir. 2010) (admission of hearsay testimony was harmless error when it was "brief and obscure").[2]  Second, and more importantly, the Court twice informed the jury that the criminal charge was not at issue; the only matter for its consideration was whether Pickering lied in the search-warrant affidavit.  The Court first instructed:

> The reason for the dismissal of that charge is not an issue in this case nor is the lawfulness of [Ladd's] arrest.  The issue in the case is whether, as alleged by Mr. Ladd, Mr. Pickering lied to a State Court Judge in order to obtain a warrant to search his home.

(Trial Tr. Vol. I at 39.)  It later instructed:

> Whether there was probable cause or sufficient reason to arrest Mr. Ladd is not before you and you should not consider the legality of his arrest in conducting your deliberations, nor are you to consider the fact that the charge against Ladd was ultimately dismissed.  The one and only question

---

[1] Pickering points to Donald v. Rast, 927 F.2d 379 (8th Cir. 1991), which of course is binding on this Court.  But the Eighth Circuit did not lay down a hard-and-fast rule in Donald.  Instead, it held that dismissal of a criminal charge *for want of prosecution* is not relevant in a subsequent Section-1983 action.  Id. at 381.

[2] Given that Pickering has not cited, nor apparently reviewed, the trial transcript, it is disingenuous to argue that Ladd "highlighted repeatedly" the dismissal of the charge.  (Def. Reply at 3.)  The Court's review of the transcript suggests quite the contrary.

to be answered by you is whether Pickering lied about the existence of the
informant when he applied for the search warrant.

(Trial Tr. Vol. II at 195-96.)  The jury's written instructions contained the same

admonishment.  (See Doc. No. 219 at 9.)  And the jury is presumed to have followed

these instructions.  E.g., Ryan v. Bd. of Police Comm'rs of St. Louis, 96 F.3d 1076, 1082

n.1 (8th Cir. 1996).

    Under the circumstances, the Court cannot conclude that "substantial justice"

requires a new trial to correct this alleged "error."  Harris, 506 F.3d at 1138.

### C.    Ladd's 1993 arrest

    Pickering next argues that the Court erred in excluding evidence of Ladd's 1993

arrest.  He contends that Ladd "opened the door to admission of this evidence by offering

evidence of his good character at trial" and that that the 1993 arrest was "relevant to the

factual determination of probable cause."  (Def. Mem. at 6-7.)  Neither contention has

merit.

    The Court begins with the second argument.  The only issue in this case was

whether Pickering lied in the search-warrant affidavit about the existence of a

confidential informant.  As the Court determined at summary judgment, if no confidential

informant existed, the search-warrant affidavit necessarily failed to establish probable

cause and Pickering would be liable for the fabrication (and the resultant search).  See

2010 WL 3892139, at *7.  Simply put, Pickering's argument that Ladd's 1993 arrest was

"relevant to the factual determination of probable cause" is erroneous, because that arrest

*was not mentioned in the search-warrant affidavit*.  See, e.g., United States v. Wells, 347

F.3d 280, 286 (8th Cir. 2003) (noting that where, as here, a judge relies only upon an affidavit in deciding whether to issue a search warrant, "only the information found within the four corners of the affidavit may be considered" when analyzing the existence of probable cause) (citation omitted).  What Pickering might have known about an arrest in Ladd's past is irrelevant; what matters is what he put on paper.

Pickering's remaining argument is similarly unavailing.  He contends that Ladd opened the door to admission of his 1993 arrest because he testified about his good character, "stating that he was 'an American' and a 'boy scout.'"  (Def. Mem. at 7.)  Putting aside the Court's struggle to understand how calling oneself "an American" is character evidence, the matters about which Ladd testified were narrow and served only to provide the jury with limited information regarding his background.  See, e.g., United States v. Edwards, 159 F.3d 1117, 1129 (8th Cir. 1998); Virgin Islands v. Grant, 775 F.2d 508, 513 (3rd Cir. 1985) (noting that "it is helpful for the trier of fact to know something about a defendant's background when evaluating his culpability"); Cook v. Spencer, 688 F.2d 1017, 1018 (5th Cir. 1982) (*per curiam*) ("[B]ackground evidence may be admitted in the judge's discretion."); Fed. R. Evid. 401 advisory committee note (1972) ("Evidence which is essentially background in nature . . . is universally offered and admitted as an aid to understanding.").  In the Court's view, the challenged testimony was mere background evidence, not character evidence that opened the door for rebuttal.

Indeed, Ladd intended to offer several witnesses to testify regarding his good character, but the Court excluded them.  (See Trial Tr. Vol. I at 176-78.)[3]

Moreover, Pickering does not explain how the 1993 arrest fits within the Federal Rules of Evidence's narrow exceptions for character evidence, which is generally inadmissible.  See, e.g., Schafer v. Time, Inc., 142 F.3d 1361, 1370 (11th Cir. 1998) ("Evidence of a person's character is viewed with some suspicion under the law and generally is disfavored in the Federal Rules of Evidence."); Caughman v. Wash. Terminal Co., 345 F.2d 434, 437 (D.C. Cir. 1965) ("[E]vidence on the character of a party in a civil suit is generally inadmissible."); SEC v. Drescher, No. 99 Civ. 1418, 2001 WL 1602978, at *2 (S.D.N.Y. Dec. 13, 2001) ("[A]s a general matter, character evidence in civil cases is inadmissible.").  He claims, had the Court not "erred," that he would have cross-examined Ladd with the police report from the arrest.  (Def. Mem. at 7.)  But even in those rare instances in which character evidence is allowed, "a party may offer *reputation or opinion* testimony on th[at] issue," not extrinsic evidence.  Schafer, 142 F.3d at 1371 (emphasis added) (citing Fed. R. Evid. 404).  Only when a person's character is "an essential element of a charge, claim or defense," such as a claim for libel or slander, "may a party offer evidence of specific instances of conduct."  Id.[4]

---

[3] The Court is mindful that the line between character evidence and background evidence "is blurred, and . . . at some point a [party] who goes too far with evidence indicating good character, despite attempts to characterize it as background evidence, might find that the door to rebuttal evidence has been opened."  Grant, 775 F.2d at 513 n.7.  Given the limited amount of background to which Ladd testified here, the Court does not believe this line was crossed at trial.

[4] Extrinsic evidence of the 1993 arrest also could not be used for impeachment purposes.  See Fed. R. Evid. 608(b) (precluding the use of extrinsic evidence of prior conduct for impeachment;

Finally, even if the 1993 arrest had been admissible, its relevance would have been marginal at best given its age, yet it would have created a significant danger of unfair prejudice.  See, e.g., United States v. Oaks, 606 F.3d 530, 538 (8th Cir. 2010) ("Character evidence is of slight probative value and may be very prejudicial.  It tends to distract the trier of fact from the main question of what actually happened on the particular occasion.") (citation omitted).  Evidence concerning the arrest was excludable on this basis, as well.  See Fed. R. Evid. 403.

The Court perceives no error in excluding evidence of the 1993 arrest, for rebuttal or otherwise.

### D.     The verdict form

In his final argument, Pickering contends that the Court's special verdict form was flawed because it "fell short of requiring the jury to make a complete finding regarding probable cause."  (Def. Mem. at 4.)  Instead, the form supposedly "allowed the jury to make a finding of liability without determining whether Pickering [also] lied about his surveillance."  (Id. at 8.)  And according to Pickering, "probable cause existed based on [his] surveillance alone," that is, even with the information concerning the confidential informant stripped from the search-warrant affidavit.  (Def. Reply at 5.)  This argument is wholly devoid of merit.

The Court has been down this road before.  Pickering made the same argument at summary judgment, and the Court rejected it:

---

only *inquiry* is allowed, and even then, only when the prior conduct is "probative of truthfulness or untruthfulness").

Pickering next argues that even if the informant's information were removed from the Search Warrant Affidavit, sufficient information would remain to support a finding of probable cause. . . .

[I]n the Court's view, [the remaining information is] insufficient []. Pickering notes that in the Search Warrant Affidavit, he averred that (1) Ladd had a prior felony conviction and (2) he observed Ladd "carrying a long item covered with what appeared to be a blanket" into his home. He now claims this is sufficient to establish probable cause that Ladd was a felon in possession of a firearm. But that conclusion requires too much of an inferential leap; a "long item covered with . . . a blanket" could be anything, and certainly need not be a firearm. . . .

Pickering notes that in his deposition, he testified that he believed (based on his law-enforcement experience) that the item was a firearm. Yet, he did not include that information in the Search Warrant Affidavit. . . . [W]ithout that information, all the Search Warrant Affidavit establishes is that Ladd brought some unknown large object into his home. This is simply not enough.

2010 WL 3892139, at *7-8. Hence, the *only* issue for resolution in this case was whether Pickering lied about the informant – the precise question submitted to the jury.

Moreover, the Eighth Circuit has instructed district courts, in situations like those presented here, to craft special interrogatories for the jury to determine the predicate facts upon which a constitutional violation turns. See, e.g., Lee v. Anderson, 616 F.3d 803, 811 (8th Cir. 2010); Littrell v. Franklin, 388 F.3d 578, 585-86 (8th Cir. 2004). The Court prepared the special verdict form with this principle in mind. Once the jury answered in the affirmative the one question on the special verdict form and determined that Pickering had lied about the existence of the confidential informant, he became responsible for an unlawful search. Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

For all of the foregoing reasons, Pickering has failed to establish that he is entitled to a new trial. His Motion will therefore be denied.

III.    **Fees and costs**

Ladd has filed a Motion seeking almost $400,000 in attorneys' fees and costs expended in this case.  Title 42 U.S.C. § 1988(b) provides that in a civil-rights action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."  Despite its permissive language, the Supreme Court has interpreted Section 1988 to *entitle* a prevailing civil-rights plaintiff to a fee award, absent "special circumstances [that] would render such an award unjust."  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).  Here, it is beyond dispute that Ladd, having secured a $30,000 jury verdict in his favor, is the prevailing party.  See, e.g., Farrar v. Hobby, 506 U.S. 103, 111 (1992).  Moreover, the Court perceives no "special circumstances" rendering a fee award unjust, nor has Pickering suggested any.  Accordingly, the Court determines that a fee award is appropriate.  The only issue for resolution, then, is the amount of fees to award.

Because Section 1988 does not define the term "reasonable attorney's fee," courts have adopted the "lodestar approach" – the "guiding light of . . . fee-shifting jurisprudence" – in making that determination.  Perdue v. Kenny A. *ex rel.* Winn, 130 S. Ct. 1662, 1672 (2010) (citations omitted).  Under the lodestar approach, the Court must multiply the reasonable number of hours expended by a reasonable hourly rate for each individual performing work.  City of Burlington v. Dague, 505 U.S. 557, 559-60 (1992).  Although the lodestar approach provides an "initial estimate" of the appropriate amount

to award, <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984), it is "strong[ly]" presumed to represent a reasonable fee.  <u>Perdue</u>, 130 S. Ct. at 1673 (quoting <u>Dague</u>, 505 U.S. at 565).[5]

### A.    Reasonable hourly rates

Four individuals seek fees for work performed on this matter:  Anser Ahmad, Esq., Ladd's lead counsel who performed the brunt of the work on this case, including the trial; Attaul Malik, Esq., who assisted Ahmad after September 2010 in preparing for trial; Paula Walter, a "senior paralegal" at Ahmad's law firm who has been involved in this case from the outset; and Anthony McKnight, a former attorney who assisted Ahmad and Malik with trial preparation.  They seek the following hourly rates:  $475 (for non-trial work) and $525 (for trial work) for Ahmad; $375 for Malik; $200 for Walter; and $250 for McKnight.  Pickering objects to these hourly rates.  The Court concludes that they should be reduced.

### i.    Anser Ahmad

According to his Affidavit, Ahmad graduated from the University of Richmond Law School in 1993 and has been licensed to practice law in Pennsylvania since 1994. He runs his own law firm, Ahmad Law Offices, in Harrisburg, Pennsylvania, where he handles civil-rights, criminal, and immigration cases.  In addition to having argued over

---

[5] Ladd and Pickering each point to the twelve-factor test in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), which the Eighth Circuit has repeatedly cited when considering the reasonableness of fees.  (<u>See</u> Pl. Mem. at 17; Def. Mem. in Opp'n at 2.)  But in <u>Perdue</u>, the Supreme Court rejected the usefulness of the <u>Johnson</u> factors, which "placed unlimited discretion in trial judges and produced disparate results."  130 S. Ct. at 1672 (citation omitted).  This Court, therefore, will not consider those factors.  <u>See, e.g.</u>, <u>Coleman v. Crossroads Lending Grp., Inc.</u>, Civ. No. 09-221, 2010 WL 4676984, at *12 (D. Minn. Nov. 9, 2010) (Schiltz, J.) (declining to consider <u>Johnson</u> factors after <u>Perdue</u>).

25 appeals, Ahmad avers that he has handled more than 50 trials in state and federal court.  (See generally Ahmad Aff. ¶¶ 1-14.)  He seeks $475 per hour for his non-trial time and $525 per hour for his trial time, which represents a 15% discount off the rates he typically charges.  (See Pl. Mem. at 23.)  The Court cannot accede to these rates.

Initially, the Court rejects the suggestion that Ahmad is entitled to non-St. Louis rates because he has a "national practice."  (See Pl. Mem. at 23-25.)[6]  The Eighth Circuit has instructed that out-of-town rates may be awarded only when a plaintiff is "unable to find local counsel able and willing to take the case" despite his "diligent, good faith efforts."  Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001) (citing Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140-41 (8th Cir. 1982) (en banc)).  Here, Ladd submitted no evidence with his moving papers suggesting that he was unable to find local counsel to take his case.  Only after Pickering pointed out that failure did Ladd finally file an unsworn "Affidavit," in which he merely avers in general terms that he made attempts to secure counsel without success.  Under the circumstances, the Court finds this Affidavit wanting.  Moreover, Westlaw reveals hundreds of recent civil-rights cases in the Eastern District of Missouri in which plaintiffs were able to secure local counsel.  Out-of-town rates simply are not justified here. See Avalon, 689 F.2d at 141 (rejecting appellant's contention that no local counsel were available to take First-Amendment case;

---

[6] Ladd's brief is confusing in this regard.  While in some places he contends that out-of-town rates are appropriate (see Pl. Mem. at 23-25), in others he appears to recognize that a "reasonable hourly rate is . . . the ordinary rate for similar work in the community where the case has been litigated" (id. at 16 (emphasis added)).

"[T]he day has not yet come when a civil-rights plaintiff must go out of state to get representation.").

Even if out-of-town rates are inappropriate, Ahmad claims that his requested rates are "fair and reasonable" considering "the market for legal services in [the] St. Louis, Missouri area." (Ahmad Aff. ¶ 15.)  In support, he has submitted a copy of the March 4, 2010, issue of Missouri Lawyers Weekly, which includes a survey of billing rates at Missouri law firms.  (Pl. Mem. Ex. A.)  Yet, that survey does not aid his cause.  Indeed, its "most expensive" St. Louis attorney is a partner at Thompson Coburn LLP, a large law firm, who practices bankruptcy law and has been admitted to the bar nearly twice as long as Ahmad.[7]  In 2009, he billed $480 per hour.  (Id.)  The remaining nine "most expensive" St. Louis attorneys billed at hourly rates from $300 to $451 per hour, with all but two below $400 per hour.  (Id.)  In other words, the survey does not support an hourly rate approaching (or exceeding) $500 here.

Recent decisions of this Court further confirm that Ahmad's hourly rates must be reduced.  For example, in Day v. Robinwood West Community Improvement District, a civil-rights action challenging certain voting regulations, Judge Richard Webber recently approved a rate of $225 per hour for the prevailing plaintiff's attorney, who has practiced law for approximately the same amount of time as Ahmad.  (See Doc. No. 74, Civ. No. 4:08CV1888.)  Judge Catherine Perry also approved that rate for the same attorney in Phelps-Roper v. City of Manchester, a successful First-Amendment challenge to a city

---

[7] See http://www.thompsoncoburn.com/people/find-a-professional/david-warfield.aspx (last visited March 28, 2011).

ordinance.  No. 4:09CV1298, 2010 WL 4628202, at *2 (E.D. Mo. Nov. 8, 2010).  And in

Roark v. South Iron R-1 School District, Judge Perry approved rates between $175 and

$285 per hour for experienced civil-rights lawyers in an action seeking to enjoin a school

Bible-distribution policy.  (See Doc. Nos. 105, 114, Civ. No. 4:06CV392.)

    The Court enjoys broad discretion in determining appropriate hourly rates and

may rely upon its "own experience and knowledge" when doing so.  Hanig v. Lee, 415

F.3d 822, 825 (8th Cir. 2005).  Based on the Court's own experience and knowledge, the

rates in other civil-rights cases in this district, and the other evidence in the record, the

Court concludes that a reasonable hourly rate for Ahmad is $250, whether for trial or

non-trial work.[8]

### ii.    Attaul Malik

    Malik is a 2001 graduate of Columbia Law School.  Although he previously

worked at a prestigious New York law firm, he has nowhere recited his experience with

civil-rights litigation or even litigation generally.  (See generally Malik Aff. ¶¶ 1-6.)

Given the length of time he has been admitted to practice and the limited amount of

information in the record, the Court concludes that the rate he seeks – $375 per hour – is

simply too high.  The Court determines that $200 is an appropriate hourly rate for Malik.

### iii.   Paula Walter

    Walter is a paralegal who has worked for Ahmad since 2000.  She seeks $200 per

hour for work she performed on this case.  It is well-settled that legal work, as opposed to

---

[8] Pickering acknowledges that an hourly rate up to $300 is reasonable for Ahmad.  (Def. Mem. in Opp'n at 7.)

purely clerical or secretarial work, is compensable under Section 1988 even when performed by a paralegal.  See, e.g., Missouri v. Jenkins, 491 U.S. 274, 285 (1989). Nevertheless, the Court concludes that the hourly rate sought for Walter is excessive.

As noted above, several judges of this Court have recently approved attorney rates equal to or only slightly higher than the rate Walter seeks.  It also equals the rate the Court approved above for Malik, an attorney with nine years' experience.  As aptly stated in Weitz Co., L.L.C. v. MacKenzie House, L.L.C., No. 07-0103-CV, 2010 WL 2292271, at *1 n.1 (W.D. Mo. June 3, 2010), "[w]ithout demeaning or minimizing the value of a paralegal's work, the Court holds that an hourly rate for paralegals that rivals the rate charged for attorney's work is excessive."

Recent decisions of this Court have awarded anywhere from $75 per hour, see, e.g., Lash v. Hollis, No. 2:05CV32, 2007 WL 2323406, at *6 (E.D. Mo. Aug. 10, 2007), aff'd in relevant part, 525 F.3d 636 (8th Cir. 2008), to $195 per hour, see, e.g., Med. Shoppe Int'l, Inc. v. CKI Pharm., Inc., No. 4:10-CV-221, 2010 WL 1713653, at *1 (E.D. Mo. Apr. 28, 2010), for paralegal work.  In the Court's view, $100 is an appropriate hourly rate for Walter.  See, e.g., Radica v. Astrue, No. 4:08CV458, 2009 WL 5177163, at *1 (E.D. Mo. Dec. 22, 2009) ($100 per hour was reasonable for paralegal); Sellers v. Peters, 624 F. Supp. 2d 1064, 1071 (E.D. Mo. 2008) (same).

### iv.    Anthony McKnight

McKnight is a 1989 graduate of Boston College Law School and was admitted to the Pennsylvania bar in 1994.  From 1994 to 2000, he was a solo practitioner who handled complex criminal and civil litigation, including civil-rights cases.  (See generally

McKnight Aff. ¶¶ 1-20.)  He began working on this case under Ahmad's supervision in November 2010, helping with "the development of legal arguments, legal research, legal writing, review of discovery and trial preparation work."  (Id. ¶ 23.)  He seeks $250 per hour.

The Court concludes that McKnight's rate is excessive.  Although he was an attorney previously, he is no longer a member of the bar.  The Court concludes that an appropriate hourly rate is $150.

### B.  Reasonable hours expended

Rounded to the nearest hour, Ahmad seeks to recover for 649 hours he expended on this litigation, Malik seeks to recover for 123 hours expended, Walter seeks to recover for 79 hours, and McKnight seeks to recover for 53 hours.  (See Pl. Mem. at 26.)  The Court must reduce from these totals all "excessive, redundant, or otherwise unnecessary" hours.  El-Tabech v. Clarke, 616 F.3d 834, 842 (8th Cir. 2010) (quoting Hensley, 461 U.S. at 434).  Pickering raises several objections to the claimed hours, and the Court concludes that a reduction is appropriate, for several reasons.[9]

---

[9] Most of Pickering's objections are subsumed within the analysis set forth below.  However, the Court pauses to address one objection in particular:  that fees cannot be recovered for the 2007 appeal, following the dismissal of this case at summary judgment.  (Def. Mem. in Opp'n at 16.)  Though not immediately obvious, the Court notes that it enjoys the authority to award attorney fees for the appeal.  See Little Rock Sch. Dist. v. Arkansas, 127 F.3d 693, 696-97 (8th Cir.1997).  Nevertheless, Pickering argues that such fees are inappropriate here, citing Reel v. Arkansas Department of Correction, 672 F.2d 693 (8th Cir. 1982).  In Reel, part of the appellant's claim was dismissed by the district court.  After that dismissal was reversed on appeal, the appellant sought a fee award.  Based on its reading of Hanrahan v. Hampton, 446 U.S. 754, 757-58 (1980) (per curiam), the Court of Appeals concluded that fees on appeal are appropriate only when the appellant "establish[es] substantial rights on appeal, based on the merits of [his] claims."  672 F.2d at 699.  Because the appellant had "merely had his case remanded to the district court for a

First, the Court determines that the number of hours expended on certain tasks was excessive.  Merely by way of example, Ahmad submitted a 45-page brief to the Court in support of the attorney-fee request.  That brief is overly lengthy, replete with redundant citations and repeated discussion of this case's factual background, with which the Court is intimately familiar.  McKnight expended nearly 34 hours working on the brief and Ahmad expended more than 12.  Although a prevailing party may recover fees for preparing a fee petition, see El-Tabech, 616 F.3d at 843-44, the Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation."  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 609 (2001).

Second, certain of the billing entries are duplicative.  For instance, Malik spent 30 hours performing legal research in connection with Ladd's spoliation motion, as well as drafting the Motion.  Ahmad, however, also spent nearly 18 hours reviewing and editing Malik's work.  While there exists no *per se* rule prohibiting a litigant from having more than one attorney work on his case, see, e.g., A.J. *ex rel.* L.B. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995), the Court is left with the distinct impression that certain parts of this case were "overlawyered."  Kline v. City of Kan. City, Mo., Fire Dep't, 245 F.3d 707, 709

determination of his rights," the Eighth Circuit declined to award fees.  Id.  Pickering argues that the same logic applies here.

Yet, Hanrahan and Reel dealt with *interim* fee awards, not final awards following the entry of judgment, as in this case.  Moreover, subsequent to Reel, the Eighth Circuit has intimated that a party to an appeal may be a "prevailing party" under Section 1988 even if the appeal did not "establish[] substantial rights."  See, e.g., Warnock v. Archer, 397 F.3d 1024, 1026 (8th Cir. 2005) (noting that successfully defending cross-appeal in civil-rights action was sufficient to entitle party to fees); Jenkins v. Missouri, 127 F.3d 709, 720 (8th Cir. 1997).  Because a successful appeal was necessary for Ladd to vindicate his rights here, the Court concludes that he was a "prevailing party" on appeal and, hence, appellate fees may be awarded.

- 20 -

(8th Cir. 2001) (affirming reduction of fees for "overlawyering"); Kierst, 56 F.3d at 864 ("A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used.").

Third, some of the hours billed were for secretarial or clerical tasks, which are not compensable. See Jenkins, 491 U.S. at 288 n.10.  Walter's time records indicate hours expended making photocopies, mailing documents, scanning exhibits, calendaring dates, and other similar tasks.

Fourth, many hours were expended on unnecessary tasks.  Ahmad contends, for example, that the attorneys were required to undertake "extensive research" into the recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (regarding the standard of review on a motion to dismiss), and Pearson v. Callahan, 129 S. Ct. 808 (2009) (regarding the appropriate method of analyzing qualified immunity).  (Pl. Mem. at 19 & nn.2-3.)  But Twombly was decided *after* the Court ruled on the Motions to Dismiss in this case, and hence it had no application here.  And Pearson merely authorized courts to skip the first step in the qualified-immunity analysis (whether the facts alleged establish a constitutional violation) and proceed directly to the second step (whether the constitutional right at issue was clearly established on the date in question).  See 129 S. Ct. at 818.  Neither of these cases should have engendered the "extensive" research here.

For all of these reasons, the Court concludes that a reduction in the number of hours claimed is warranted.  Rather than make a line-by-line cut to account for these issues, the Court will exercise its discretion to make a percentage reduction.  See, e.g., Rural Water Sys. No. 1 v. City of Sioux Ctr., 202 F.3d 1035, 1039 (8th Cir. 2000)

(affirming percentage reduction based on, *inter alia*, "excess hours[] and duplication").

The Court believes that a 20% reduction in the number of hours claimed is appropriate.

### C.   The lodestar amount

Based on the foregoing, the Court calculates the lodestar amount as follows:

|  | Reasonable hourly rate | Hours claimed (rounded to nearest hour) | Hours following 20% reduction (rounded to nearest hour) | Product of hours and rate |
|---|---|---|---|---|
| Ahmad | $250 | 649 | 519 | $129,750 |
| Malik | $200 | 123 | 98 | $19,600 |
| Walter | $100 | 79 | 63 | $6,300 |
| McKnight | $150 | 53 | 42 | $6,300 |
|  |  |  | **TOTAL** | $161,950 |

### D.   Reduction for partial success

Once the lodestar amount has been calculated, a court may reduce that amount to reflect the prevailing party's limited or partial success.  E.g., Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003).  Indeed, when awarding fees, "the most critical factor is the degree of success obtained."  Hensley, 461 U.S. at 436.  Here, the Court concludes that a reduction for partial success is warranted.

When Ladd commenced this action, he sued several federal and local actors, including the City of St. Louis and its Mayor, the United States Attorney's Office for the Eastern District of Missouri, the St. Louis Metropolitan Police Department and its Chief, the FBI, and others, including Pickering.  Besides alleging that Pickering had lied in the

search-warrant affidavit, the Complaint also made wild allegations of conspiracies among the United States Attorney and members of the local police.  (See Doc. No. 1 ¶¶ 41-45.) After the Court dismissed most of these claims (see Doc. No. 53), Ladd filed an Amended Complaint that narrowed the number of Defendants targeted but persisted in speculative and, in the Court's view, outlandish allegations of a broad conspiracy at the highest levels of the St. Louis police department.  (See Doc. No. 54 ¶¶ 51-57.)  Once again, the Court dismissed most of Ladd's claims, ultimately distilling this case to the one claim that survived to trial:  the Fourth-Amendment claim against Pickering, in his individual capacity.  (See Doc. No. 71.)  When Ladd later appealed the dismissal of this lone-remaining claim at summary judgment, he did not challenge the Court's earlier dismissal of his other claims.  Had Ladd culled his claims at the outset and focused on the one claim having merit, the amount of fees incurred in this case would have been substantially smaller.

Ladd argues that these other claims arose from the same "core of facts" as his successful claim against Pickering and, therefore, he may recover for time devoted to them.  (Pl. Mem. at 33.)  But "even where the plaintiff's claims were interrelated," the lodestar amount may be excessive if the plaintiff ultimately achieved only partial or limited success on his claims as a whole.  Hensley, 461 U.S. at 436.  That is true here.

Moreover, the Court notes that the amount Ladd recovered at trial was small in comparison to the amount he sought in his Amended Complaint.  The jury awarded him only $5,000 in compensatory damages, while in his pleading he sought $350,000.  (See Doc. No. 54 at 9.)  He also sought $1.5 million in punitive damages, but the jury awarded

him $25,000.  (Id. at 10.)  "[T]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988."  City of Riverside v. Rivera, 477 U.S. 561, 574 (1986).  Indeed, the high Court noted in Farrar that "[w]here recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is *obligated* to give *primary consideration* to the amount of damages awarded as compared to the amount sought."  506 U.S. at 114 (emphases added).

The Court recognizes that Ladd achieved victory in this case, no small feat for a civil-rights plaintiff.  As the foregoing makes clear, however, this does not change the fact that his success was limited.  Accordingly, the Court concludes that a further 20% reduction is appropriate.  See Hensley, 461 U.S. at 436-37 (noting that "[t]here is no precise rule or formula" to apply when reducing the lodestar for partial success, and a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award"); Jensen v. Clarke, 94 F.3d 1191, 1203-04 (8th Cir. 1996) (affirming percentage reduction for partial success).

A 20% reduction of the lodestar amount ($161,950) results in a fee award of $129,560.  The Court finds this is an appropriate fee given the nature of the issues presented and the length of this case.

### E.   Costs

Ladd also seeks to recover $3,540 in travel costs incurred by his attorneys in the course of this litigation.  Pickering asserts that such costs are not recoverable under 28 U.S.C. § 1920.  But the authority to award such expenses does not come from Section 1920; rather, it comes from Section 1988.  See, e.g., Jenkins v. Kan. City Mo. Sch. Dist.,

525 F.3d 682, 682 n.1 (8th Cir. 2008) ("travel expenses and other out-of-pocket expenses that a law firm normally would bill to its client are more properly characterized as part of an attorney fee award" under Section 1988 than costs under Section 1920); Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996) (*per curiam*) (same).[10]  And Pickering has nowhere argued that travel expenses are not typically billed by attorneys to their clients.  The Court concludes that Ladd may recover these expenses.

However, one deduction is warranted:  the cost for Malik to travel to St. Louis to attend the summary-judgment hearing ($315.30).  The Court concludes that this cost is duplicative, since Malik did not argue the Motion or even note his appearance until prompted by the Court.

Accordingly, Ladd is entitled to recover $3,134.70 ($3,450 minus $315.30) for travel expenses.

**F.     Interest**

Pursuant to 28 U.S.C. § 1961, Ladd seeks an award of post-judgment interest. Section 1961(a) provides that interest "shall be allowed on any money judgment in a civil case recovered in a district court."  Pickering objects, arguing that post-judgment interest "against the state is not recoverable because of sovereign immunity."  (Def. Mem. in Opp'n at 16.)  Although not entirely clear, his argument apparently is predicated on the fact that Missouri's Legal Expense Fund will be responsible for paying the Judgment (and the fee award) in this case.  (See id. at 17.)  His argument is meritless.

---

[10] The Court has separately taxed the costs delineated under Section 1920.  (See Doc. Nos. 236, 237.)

Simply put, sovereign immunity is not implicated here because the Judgment was entered against *Pickering*, not the State of Missouri.  (<u>See</u> Doc. No. 222 at 2.)  It makes no difference that the State, through its Legal Expense Fund, will indemnify him.  <u>See State *ex rel.* Cravens v. Nixon</u>, 234 S.W.3d 442, 449 (Mo. Ct. App. 2007) ("[S]overeign immunity [is] not available as a defense by the State to actions seeking recovery from the [Legal Expense] Fund, given that the underlying litigation is against state employees, rather than the state itself.").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1.      Pickering's Motion for Judgment as a Matter of Law After Judgment on the Verdict or, in the Alternative, Motion for New Trial (Doc. No. 226) is **DENIED**; and

2.      Ladd's Motion for an Award of Reasonable Attorney's Fees, Litigation Costs, Expenses and Interest (Doc. No. 224) is **GRANTED IN PART** and **DENIED IN PART**.  Ladd shall recover of Pickering the sum of $132,694.70, comprising $129,560 in attorneys' fees and $3,134.70 in costs (separate and apart from the costs previously taxed in this action).  Interest on the Judgment and the fee award shall accrue as provided in 28 U.S.C. § 1961.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  March 30, 2011

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge